Miriam EMMER, Trustee, and M.J. Rubin, Appellants,

v.

PHILLIPS PETROLEUM COMPANY, Appellee.

No. 07–82–0047–CV.

Court of Appeals of Texas, Amarillo.

March 28, 1984.

Rehearing Denied April 19, 1984.

The Wolfram Law Firm, Walter P. Wolfram, Amarillo, for appellants.

Joe Cochran, Amarillo, for appellee.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

COUNTISS, Justice.

This is a contract dispute. Miriam Emmer, as trustee, and her brother, M.J. Rubin, appellants and hereafter collectively "the Rubins," sued Phillips Petroleum Company, hereafter "Phillips," to recover damages resulting from Phillips' use of gas compressors jointly owned by the parties. The trial court granted a summary judgment to Phillips. In this Court, the Rubins attack that judgment by six points of error. We reverse and remand.

We construct the following factual background from the summary judgment evidence. The Rubins' father, Dave Rubin, conveyed an interest to Phillips in two gas compressors, and he and Phillips entered into a series of agreements governing the joint ownership and use of the compressors. As pertinent here, they agreed in a written contract dated May 6, 1960, on the use of the compressors to compress gas from a leasehold characterized as the Burnett lease. In the May 6 contract the parties recognized that the need for the compression facilities would lessen as the volume of gas available from the Burnett lease declined. Thus, the contract stated:

> When any equipment is no longer needed or becomes unprofitable in the judgment of Phillips, such equipment shall be salvaged and the proceeds thereof divided equally between the parties hereto; provided, however, that at any time such equipment is proposed to be salvaged Phillips shall have the option, to be exercised within thirty days following notice of intent to salvage such equipment, to purchase Second Party's interest in such equipment for a price equal to the fair market value of such equipment.

Additionally, the parties agreed to jointly share maintenance and repair expenses on the compressors.

Rubin and Phillips also agreed on the period for which the contract was to be in force, as follows:

> This Agreement shall be effective from and after the date hereof and shall continue in force and effect so long as Phillips purchases gas from the above described lands and leases pursuant to said Assignment and Agreement, as amended.

Pursuant to a letter dated June 8, 1962, Rubin and Phillips amended the May 6, 1960 contract. Under the June 8 amendment, Phillips was permitted to use the compressors to compress gas from sources other than the Burnett lease, "during the term of the Amended Agreement," *i.e.*, the

May 6 contract. Phillips agreed to pay Rubin $.05 per MCF "for all gas compressed and delivered to Phillips in such compression facilities...." [1]

In February of 1976, after the Rubins had acquired their father's interest in the contract, Phillips advised them it was planning to plug and abandon the active wells on the Burnett lease. Subsequently, in July of 1976, Phillips advised the Rubins that all wells on the lease had been plugged, that the compressors had lost money in May, 1976, because of maintenance costs, and that additional maintenance would be required because of the age of the compressors. Phillips also offered to buy the Rubins' interest in the compressors. The Rubins did not respond to the offer, but, in September of 1976, requested an accounting of the earnings from the compressors for April through September of 1976.

Phillips continued to operate the compressors until mid-1978, compressing gas from other leases and crediting the Rubins at the rate of $.05 per MCF. Because maintenance costs and expenses exceeded the credit, the compressors lost money virtually every month during that time and the Rubins paid their proportionate share of the loss each month. In mid-1978, the Rubins requested termination of the operation. Phillips complied, and subsequently purchased the Rubins' interest in the compressors.

The Rubins then filed this suit, alleging various acts of misconduct by, and reasons to recover money from, Phillips. For purposes of this appeal, however, we are concerned only with the Rubins' quantum meruit allegations. The Rubins' alleged that the May 6 contract expired by its own terms in late 1975, when Phillips stopped purchasing gas from the Burnett lease. From this premise the Rubins argue that compensation for all subsequent use of the compressors was not governed by the $.05 per MCF price specified in the May 6 contract; rather, they were entitled to be compensated in quantum meruit for the reasonable market value of the compression services, alleged to be $.25 per MCF. Thus, say the Rubins, the compressors operated at a substantial profit, not a loss, during the 1976–78 time frame in question and they are entitled to recover their share of that profit from Phillips.

Phillips responded with defensive pleadings and, after the parties participated in various discovery proceedings, moved for summary judgment. Phillips advanced various grounds in support of the motion, but predicated the entire motion on the contention that all operations during the period of time in question were conducted under or governed by the 1960 agreement and that it had fully complied with that agreement.

The Rubins responded, as pertinent here, by contending that the 1960 agreement expired when Phillips stopped compressing gas from the Burnett lease and that they were thereafter entitled to be compensated at a compression rate based on reasonable fair market conditions. M.J. Rubin swore that the "fair market value of the compression services rendered would have been at $.25/mcf, yielding a profit to Plaintiff Emmer of $58,362.92 and to Plaintiff Rubin of $29,681.46."

In this Court, the Rubins contend by their third and fourth points of error, that Phillips failed to establish the absence of, and that there was, a fact issue on their right to be compensated at the rate of $.25 per MCF, rather than $.05 per MCF for compression services rendered after expiration of the contract. Because we have concluded that those points are determinative of this appeal, we will resolve them first.

 The issues before us must be resolved within the framework of settled principles of summary judgment law.[2] A movant earns a summary judgment by es-

1. MCF is the industry symbol for one thousand cubic feet.

2. For a comprehensive survey of Texas summary judgment law, *see generally* Hittner, *Summary Judgments in Texas*, 35 Baylor L.Rev. 206 (1983).

tablishing (1) the absence of genuine issues of material fact and (2) the right to judgment under those undisputed material facts, as a matter of law, on grounds expressly stated in the motion. Tex.R.Civ. Pro. 166–A(c); *Delgado v. Burns,* 656 S.W.2d 428, 429 (Tex.1983); *Whiddon v. Metni,* 650 S.W.2d 904, 905 (Tex.App.—Dallas 1983, writ ref'd n.r.e.). The movant, against whom all doubts are resolved, has the burden of establishing both elements, *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979), and, when the defendant is the movant, summary judgment is proper only if the plaintiff cannot, as a matter of law, succeed upon any theory plead. *Peirce v. Sheldon Petroleum Co.,* 589 S.W.2d 849, 852 (Tex.Civ.App.—Amarillo 1979, no writ). Thus, the defendant can prevail by conclusively establishing against the plaintiff at least one factual element of each theory plead by the plaintiff, *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex. 1970), or by conclusively establishing every factual element of an affirmative defense. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). Conversely, the plaintiff can bar the defendant's entitlement to a summary judgment by responding with evidence that creates a fact question on those elements of the plaintiff's case under attack by the defendant or on at least one element of each affirmative defense advanced by the defendant. *Torres v. Western Casualty & Surety Co.,* 457 S.W.2d 50, 52 (Tex.1970); *see also Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 680–81 (Tex.1982).

Because the nature of the contractual relationship is the threshold question in this dispute, the stated summary judgment principles, which define the scope of our review, must be collated with the applicable principles of contract law, which define the substantive posture of the case.

■ If the parties have expressly stated the terms of their agreement, they have created an express contract and are bound by it to the exclusion of conflicting implied terms. *Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld. Co.,* 480 S.W.2d 607, 609 (Tex.1972); *Woodard v. Southwest States, Inc.,* 384 S.W.2d 674, 675 (Tex. 1964). The absence of an express contract does not, however, foreclose the possibility of a contractual relationship, because the parties may, by their acts and conduct, create an implied contract. *Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld. Co., supra.* Recovery in quantum meruit, for example, is based upon an implied promise to pay for beneficial services rendered and knowingly accepted. The promise is implied by law to avoid injustice, and without regard to the parties' actual intent. *Black Lake Pipe Line Co. v. Union Const. Co.,* 538 S.W.2d 80, 86 (Tex.1976). In contracts implied in fact, the law finds a mutual intent to contract from the facts and circumstances of the case. *Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld. Co., supra.*[3] Whether that mutual intent exists, however, is a question of fact. *Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld. Co.,* 480 S.W.2d at 609–610; *Producers Grain Corp. v. Lindsay,* 603 S.W.2d 326, 328 (Tex.Civ.App.—Amarillo 1980, no writ).

The situation becomes more complex when parties initially operate under an express contract, but continue to operate in essentially the same manner after the express contract has expired. Although there is scant Texas law on the problem, other jurisdictions have held that, after expiration of the express contract, the rights of the parties are to be determined under implied contract principles. Although their conduct may permit a finding that the parties have impliedly agreed that their rights should continue to be measured by the old contract, those rights arise from the new implied contract, not the old expired con-

---

**3.** As discussed in the cited case, at least one legal scholar takes issue with the use of the term "implied" contract, arguing that all contracts are express contracts and that the difference is in the modes of expressing assent, *i.e.,* by words or by action. 1 A. Corbin, Contracts §§ 17, 18 (1963). The observation is valid, but the benefit of using commonly understood terms outweighs the detriment of tolerating the imprecise thought process underlying the use of the terms.

tract. *New York Telephone Co. v. James-town Telephone Corp.,* 282 N.Y. 365, 26 N.E.2d 295, 297 (1940); *Martin v. Campanaro,* 156 F.2d 127, 129 (2d Cir.), *cert. denied,* 329 U.S. 759, 67 S.Ct. 112, 91 L.Ed. 654 (1946); *see Professional Beauty Products, Inc. v. Derington,* 513 S.W.2d 236, 239 (Tex.Civ.App.—El Paso 1974, writ ref'd n.r.e.). *See also* 17 Am.Jur.2d *Contracts* § 520 (1964).

■■■ When we apply the foregoing principles to this case, we conclude that Phillips has not earned a summary judgment. Phillips' motion, and the affirmative defenses it advances, are predicated on the contention that all of the rights and obligations of the parties are to be determined under the express contract of 1960. Yet, by its terms, and as a matter of law under this record, the 1960 contract terminated when Phillips stopped buying gas from the Burnett lease in late 1975 or early 1976. Thus, Phillips did not conclusively establish the 1960 contract as the measure of the parties' rights from early 1976 to mid-1978 when operations ceased and that defect undermines the foundation for Phillips' motion. If the parties have rights and obligations toward each other, those matters exist under an implied contract created by their acts and conduct after the express contract expired. We realize that the parties may have created an implied contract that incorporates the terms of the express contract. Under this record, however, that is an unresolved fact issue. Until that issue is resolved, we cannot determine the efficacy of affirmative defenses to the contract.[4] Thus, we must sustain points of error three and four. Our disposition of those points renders moot the Rubins' remaining points and they will not be considered.

4. Phillips would not, of course, have the burden of establishing the terms of the contract at the trial on the merits. An affirmative defense, however, is a defense in avoidance, not a defense in denial. *Hays Cons. Ind. Sch. D. v. Valero Trans. Co.,* 645 S.W.2d 542, 546 (Tex.App. —Austin 1982, writ ref'd n.r.e.). Where, as here, the defendant-movant advances affirma-

The judgment of the trial court is reversed and the case is remanded.

tive defenses to a contract, it must either concede, for purposes of its motion, the contract alleged by the plaintiff or conclusively establish some other version of the contract. Otherwise, we have nothing by which to measure the affirmative defenses. *See Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 680 (Tex.1982).