**JAMES MYERS & ASSOCIATES, INC., et al, Appellants,**

v.

**NATIONAL DEVELOPMENT COMPANY, INC., et al, Appellees.**

No. 05–86–00208–CV.

Court of Appeals of Texas, Dallas.

Dec. 10, 1986.

Rehearing Denied Jan. 13, 1987.

Robert T. Mowrey, David P. Blanke, Dallas, for appellants.

Marshall M. Searcy, Robert M. Frey, Dallas, for appellees.

Before STEPHENS, DEVANY and STEWART, JJ.

DEVANY, Justice.

James Myers and Associates, Inc., James P. Myers and Thomas C. Walker (collectively "Myers") appeal from a summary judgment against them in their suit against National Development Company ("NDC") and Robert J. Sabinske for a fee under a brokerage contract. Myers contends, among other points of error, that there was evidence to support a genuine issue of a material fact as to whether NDC and Sabinske waived the time limitation for performance under the contract. Because we hold that there was a genuine material fact issue as to whether such a waiver had occurred, we reverse and remand for a trial on the merits, and we need not address Myers' other points of error.

On an appeal from a summary judgment, the losing party can defeat the summary judgment by establishing that he raised a fact issue in the trial court. He "is not entitled to defeat the summary judgment by raising a fact issue for the first time on appeal which was not expressly presented to the trial court ..." *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 679 (Tex.1979); TEX.R.CIV.P. 166–A(c); *Delgado v. Burns*, 656 S.W.2d 428, 429 (Tex.1983). "A movant earns a summary judgment by establishing (1) the absence of genuine issues of material fact and (2) the right to judgment under those undisputed material facts ..." *Emmer v. Phillips Petroleum Company*, 668 S.W.2d 487, 490 (Tex.App.—Amarillo 1984, no writ). For the purpose of reviewing the propriety of the trial court's summary judgment, Myers' version of the facts must be taken as true and every reasonable inference to be drawn from the evidence must be resolved in his favor. *Le Blanc v. Maryland American General Insurance Co.*, 601 S.W.2d 750, 752 (Tex.Civ.App.—Beaumont 1980, writ ref'd n.r.e.); *see also Henke Grain Co. v. Keenan*, 658 S.W.2d 343, 347 (Tex.App.—Corpus Christi 1983, no writ); *Crystal City Independent School District v. Crawford*, 612 S.W.2d 73, 74 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.).

Myers' claim for a fee arises out of a brokerage contract. The evidence shows that in the summer of 1978, Robert J. Sabinske, the president of NDC, hired Myers as a broker to assist Sabinske in finding a buyer for NDC. Myers' duties included developing a sales brochure for NDC, locating potential buyers and registering them with NDC, and assisting in negotiations. Myers' evidence indicates that he began work on the project under assurances that a "handshake deal" was good from Sabinske, and that a written contract was not necessary. The two did not enter into a written contract until November 1, 1978. That contract had a strict termination date and provided that any sale to a "registered" lead supplied by Myers that was consummated within 365 days of that strict termination date would result in a commission to Myers. The parties continued to operate under that contract until it expired on May 1, 1980. However, after this expiration, and throughout the summer of 1980, Myers still continued to look for leads for Sabinske without a contract. Myers then asked Sabinske for a written extension of the contract. Myers presented Sabinske with a proposed extension a year later, in October of 1981. Myers claims that Sabinske, acting through his agent, assured Myers that the extension would be forthcoming; it appears that an extension was signed on December 28, 1981. The extension renewed the identical contract signed on November 1, 1978, extending it retroactively back to May 1, 1980, and prospectively to May 1, 1982. One could reasonably argue that the 365–day grace period for that contract would have ended on May 1, 1983. A sale was consummated with one of Myers' leads after that grace period ended.

The summary judgment evidence further indicates that Myers and Walker introduced Sabinske and NDC to TRECO, the company that eventually bought NDC in 1983. The original brokerage contract provided that if NDC was sold to a buyer procured by Myers *within* the 365–day grace period after the contract expired, Myers would receive three percent (3%) of

the consideration received by Sabinske for the sale.

■ The argument that Myers presents on appeal is that there was an issue as to whether NDC and Sabinske waived the May 1, 1982 termination date of the contract. If they did, the sale to TRECO could have occurred *while* the contract was in force or *during* the grace period that followed. While there appears to be evidence to the contrary, we hold that there was a genuine issue of a material fact as to whether Sabinske and NDC waived the contract's termination date. Until this issue is resolved, a summary judgment will not stand.

■ A time limitation in a broker's or finder's contract may be waived. *Riedel v. Wenzel*, 186 S.W. 386, 387 (Tex.Civ.App.— San Antonio 1916, no writ); *Denton v. Holbert*, 184 S.W. 251, 254 (Tex.Civ.App.—San Antonio 1916, writ ref'd). In *Cheshier v. Tidwell*, 260 S.W.2d 423 (Tex.Civ.App.— Waco 1953, no writ), the court described what acts constitute such a waiver:

> A waiver may be expressed or implied. Failure to perform within the time prescribed is waived by treating the contract as being in full force after the time has expired, or by accepting performance after such time, or by acts and conduct leading the opposite party to believe that performance within the time prescribed will not be insisted upon.

260 S.W.2d at 426 (*quoting* 10 Tex.Jur. 428, § 426); *see also Puckett v. Hoover*, 146 Tex. 1, 202 S.W.2d 209, 212 (1947) (the waiver may "not only be shown by parole, but may be made to appear from the circumstances or course of dealing."). Whether a time limit has been waived is normally a question for the jury. *Stowers v. Harper*, 376 S.W.2d 34, 39 (Tex.Civ.App. —Tyler 1964, writ ref'd n.r.e.); *Ferris v. Meeker Fertilizer Co.*, 258 Or. 377, 482 P.2d 523, 525 (1971) (no absolute test exists for the ascertainment of waiver or extension of time; it is a question of fact in each case).

■ Among the factors to be considered in determining whether a contract's time stipulation has been waived are:

(a) Whether the principal accepts the services of the broker and recognizes the contract as still in force. *Cheshier*, 260 S.W.2d at 426; *Widing v. Jensen*, 231 Or. 541, 373 P.2d 661, 665 (1962); *Ferris*, 482 P.2d at 525.

(b) Whether the principal tacitly or expressly encouraged the broker to continue his efforts to effect a sale. *See Langley v. Norris*, 141 Tex. 405, 173 S.W.2d 454, 458 (1943); *Laredo Hides Co., Inc. v. H & H Meat Products*, 513 S.W.2d 210, 218 (Tex. Civ.App.—Corpus Christi 1974, writ ref'd n.r.e.); *Kraemer v. Smith*, 179 Cal.App.2d 52, 3 Cal.Rptr. 471, 473 (1960).

(c) Whether the prior acts and conduct between the parties would lead the broker to believe that adherence to the time frame would not be insisted upon. *See Cheshier*, 260 S.W.2d at 426; *Laredo Hides Co., Inc.*, 513 S.W.2d at 217.

Myers argues, and we agree, that the following summary judgment evidence creates a genuine issue of material fact as to whether the time limitation on the contract was waived. In deposition, James Myers and Thomas Walker both testified that in April of 1982, shortly before the contract expiration date of May 1, 1982, Myers introduced Clint Murchison to Sabinske as a potential buyer for NDC. Seven days after the expiration date, on May 7, 1982, Myers sent a letter to Sabinske registering Murchison as a potential buyer, and Sabinske's secretary signed for the letter. In his deposition, Walker testified as follows about these events:

> [I]n early April, we introduced a new buyer, Mr. Clint Murchison, to Mr. Sabinske. We registered him in accordance with our agreement, and we had a number of meetings with his people, particularly Mr. Myers and me, describing National, providing data.
>
> Mr. Sabinske visited with the people on one occasion, and we worked for several months attempting to develop an interest on the part of the Murchison group to

acquire National into a group of companies they had in similar businesses.

Myers also testified about these same events in his deposition:

> The specific thing that was done [under the brokerage agreement] after May 1st [1982] was the fact that we in fact, registered a new potential purchaser and entered into discussions with those people to determine if there was an opportunity for Mr. Sabinske.
>
> QUESTION: That new purchaser you told me a while ago was the Murchison entity?
>
> A: Mr. O'Connall.
>
> Q: I'm sorry, Mr. O'Connall?
>
> A: But he is associated with the Murkison [sic] entity.

As stated earlier, because this is an appeal from a summary judgment, we must accept Myers' version of the facts as true, as a test, to determine if a trial on the merits is necessary despite evidence to the contrary. Viewed in this perspective, the evidence creates several questions of fact as to whether Sabinske accepted Myers' services after May 1, 1982; whether Sabinske treated the contract as still being in force; and whether Sabinske encouraged Myers to act as if the contract was still in force.

Myers also claims that since the parties operated without a written contract at times, before the November 1, 1978 agreement, and during the time after that agreement expired before the written extension was signed, Sabinske waived the right to insist on the time limitation which ended May 1, 1982. As evidence of this, Myers claims that Sabinske waived his right to the termination date when a letter purporting to be a registration of the Murchison lead that had previously been supplied by Myers was mailed to Sabinske after the expiration of the written contract and signed for by Sabinske's secretary. Myers further claims that Sabinske met with the Murchison representatives and accepted Myers' help in negotiating with them. This summary judgment evidence, when viewed in a light favorable to Myers, further tends to create an issue of fact as to whether the previous dealings between the parties led Myers to believe that the time limit under the contract would not be insisted upon.

We hold that the evidence raises a genuine issue of a material fact as to whether Sabinske and NDC waived the time limitation under the brokerage contract. Accordingly, we reverse the judgment of the trial court and remand the case for a trial on the merits.