NO. 07-02-0445-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL A



JUNE 3, 2003


______________________________




GARY LYNN COOK, APPELLANT



V.



THE STATE OF TEXAS, APPELLEE




_________________________________



FROM THE 108
TH DISTRICT COURT OF POTTER COUNTY;



NO. 42,186-E; HONORABLE ABE LOPEZ, JUDGE



_______________________________



Before JOHNSON, C.J., and REAVIS and CAMPBELL, JJ.

MEMORANDUM OPINION


 Pursuant to a guilty plea on May 26, 2000, to the offense of injury to an elderly
person, appellant Gary Lynn Cook was placed upon deferred adjudication community
supervision for a term of five years. Later, the State filed a motion to proceed with
adjudication of guilt and, on October 10, 2002, the trial court conducted a hearing on the
motion. Without the benefit of a plea bargain, appellant pled true to five of the seven
violations alleged by the State in its motion, and the trial court adjudicated him guilty. After
hearing evidence relevant to punishment, the court sentenced appellant to eight years
confinement. In presenting this appeal, counsel has filed an Anders brief in support of a
motion to withdraw. See Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493
(1967). Based upon the rationale expressed herein, we affirm.

 In her brief, counsel certifies she has diligently reviewed the record and determined
that, in her opinion, it reflects no reversible error or grounds upon which an appeal can be
predicated. Id. Thus, she concludes, the appeal is without merit and is frivolous. Also in the
brief, appellant's attorney candidly discusses why, under the controlling authorities, there is
no error in the court's judgment. See High v. State, 573 S.W.2d 807, 813 (Tex.Cr.App.
1978). 

 Furthermore, counsel for appellant certifies she served a copy of the brief on
appellant and informed him that, in her view, the appeal is without merit. Attached to the
brief is a copy of a letter by which the attorney notified appellant of his right to review the
record and to file a pro se brief. This court notified appellant he had until March 24, 2003,
to file a response to his attorney's brief or motion. Appellant has neither filed a pro se brief
nor requested an extension of time within which to do so.

 Initially, we note that no appeal may be taken from a trial court's determination to
adjudicate guilt. Tex. Code Crim. Proc. Ann. art. 42.12, § (5)(b) (Vernon Supp. 2003);
Connolly v. State, 983 S.W.2d 738, 741 (Tex.Cr.App. 1999). Thus, this Court may not review
such a case and must, in fact, dismiss a direct appeal of a decision to adjudicate. Hardeman
v. State, 981 S.W.2d 773, 776 (Tex.App.-Houston [14th Dist.] 1998), aff'd, 1 S.W.3d 689
(Tex.Cr.App. 1999). Thus, we have no jurisdiction to review the trial court's order adjudicating
appellant guilty. However, an appeal may be had to challenge the assessment of punishment
and pronouncement of sentence. See Art. 42.12, § (5)(b). 

 Generally, a penalty imposed within the range of punishment established by the
Legislature will not be disturbed on appeal. Flores v. State, 936 S.W.2d 478 (Tex.App.--Eastland 1996, pet. ref'd). Appellant was adjudicated guilty of intentionally or knowingly
causing bodily injury to an elderly person, a third degree felony with a range of punishment
from two to ten years. Tex. Pen. Code Ann. §§ 12.34(a), 22.04(f) (Vernon 2003). We find
the trial court did not err in sentencing appellant to eight years confinement. 

 Notwithstanding, we have made an independent examination of the entire record to
determine whether there are any arguable grounds which might support the appeal. See 
Penson v. Ohio, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 ( 1988); Stafford v. State, 813
S.W.2d 503, 511 (Tex.Cr.App. 1991). We have found no such grounds and agree with
counsel that the appeal is without merit and is, therefore, frivolous. Currie v. State, 516
S.W.2d 684 (Tex. Cr.App. 1974). 

 Accordingly, counsel's motion to withdraw is granted and the judgment of the trial court
is affirmed. 

 Don H. Reavis

 Justice

Do not publish.



P>

 We have nothing, Your Honor, other than cross-examination.


Upon completion of defense counsel's argument, counsel for the State argued and again
requested that it be allowed to present evidence at trial that appellant breached the
agreement. Defense counsel argued in response to the State's argument as follows:

 Mr. Farren did not put on any evidence today to-through the witness stand,
that Mr. Smith had lied or that he has additional evidence to show that there
was fraud in the inducement and this agreement being entered.


The trial court interrupted defense counsel and announced: (3)

 

 THE COURT: Let me stop you. I intentionally stopped Mr. Farren from doing
that because I do not want to try this case today, only to have to try it to a jury
later. If that is a bone of contention, I mean, we can cross that bridge. But, I
just want the record to reflect that I stopped Mr. Farren from presenting such
testimony as being cumulative and unnecessary and needless consumption of
the Court's time.


Then, when argument was completed, without a motion by the State and notwithstanding the
State's two requests that it be allowed to present its evidence during trial, the trial court
announced: 

 Counsel, the Court having considered the evidence and arguments of Counsel,
finds that the dismissal in this cause was not with prejudice, but was merely in
the interest of justice. In the interest of justice, the Court finds that the
Defendant's Motion to Enforce the Plea Bargain Agreement is not well taken
and will deny that motion. . . .


 The State claims the trial court denied the motion because (1) there was no agreement
because there was never a meeting of the minds as to its terms, (2) if there was an
agreement, its terms were not binding upon the trial court because it never approved the
agreement, (4) and (3) the dismissal in question was without prejudice. However, the State's
reference to the record does not support alleged findings (1) and (2). The trial court's order
denying appellant's motion on September 17, 1996, did not state any grounds or reasons
therefor and was signed by the trial court without the presentation of any evidence by the
State as to the terms of its version of the agreement or appellant's alleged non-performance
of the agreement. (5) 

 By his petition for discretionary review, appellant inquired (1) whether a subsequent
indictment for an offense arising from the transaction that was the subject of an immunity
agreement could be brought solely because the order of dismissal did not state that the
dismissal was "with prejudice," and (2) whether, after appellant upheld his end of the bargain,
the subsequent indictment could be brought solely because the trial court was unaware of the
specific terms of the immunity agreement. (6) Before we commence our analysis of the two
issues we have been directed to review, we first consider the appropriate procedure for
enforcing an immunity agreement. 

Procedure for Enforcing Immunity Agreement


Zani v. State



 In Zani, the Court announced the level of proof required for enforcing an immunity
agreement and upon whom the burden of meeting that level of proof must be placed. After 
discussing various policy concerns, the Court held:

 In the instant case, the trial court properly conducted a pre-trial hearing on the
validity of the immunity agreement in order to determine the right of the State
to prosecute. Thus, the State, in seeking to defeat the immunity agreement,
is limited to this evidence presented prior to the actual trial.


* * *



 However, we must remember that important rights are relinquished by the
informant and in many instances, as here, without the immunity agreement and
subsequent testimony no evidence would exist upon which to convict the co-defendant. If we are to keep this effective, if not attractive, criminal
investigatory tool viable we must make certain that its terms are strictly
enforced. 


(Emphasis added). 


 In sum, there will be no trial if the immunity agreement is valid. Thus, the
determination of whether the agreement is valid cannot be left for the trial itself. 
If the agreement is to mean anything such an issue must be conclusively
decided prior to trial. 


Zani, 701 S.W.2d at 254.


 Following this holding, the Court announced the procedure and allocated the burden
of proof of the defendant and the State to be utilized in the pretrial determination of the
existence and enforceability of an immunity agreement. At a pretrial hearing:


 the initial burden is on the defendant to show the existence of an
agreement by a preponderance of the evidence; 
 if the defendant meets his initial burden, then the burden shifts to the
State to show beyond a reasonable doubt why the agreement is invalid
or why prosecution should be allowed despite the agreement; and 
 in seeking to defeat the immunity agreement, the State is limited to the
evidence presented before the actual trial. 



 Appellant's version of the agreement set out in his motion and the State's version set
out in its brief differed in minor respects as follows:



 Appellant's Version Per Motion


A. Sean Allen Smith agreed to provide a video-taped statement of the events surrounding the
death of Mr. Merriman and answer all of the
prosecutor's questions to the best of his ability.


B. The District Attorney and his agents had to
believe that the Defendant was providing truthful
information to the best of his ability.


C. Sean Allen Smith would be available to testify at
any of the trials of the other defendants and would
so testify if requested to do so.


D. The District Attorney of Randall County, Texas,
Randall Sherrod, agreed, in exchange, that the
capital murder indictment pending against Sean
Allen Smith would be dismissed with prejudice and
that no other prosecution would be brought against
Sean Allen Smith as a result of the incidents
surrounding the death of Mr. Merriman. 

 

 State's Version Per Page 2

 of State's Brief Filed

 6/11/98


A. Brown [defense counsel] and the Randall
County Criminal District Attorney's office began
negotiations which resulted in an agreement
between the prosecution and appellant.


B. Appellant agreed to give the Criminal District
Attorney's office a truthful and complete statement
of the events surrounding the death of Merriman
(including appellant's own involvement in these
events) and to testify at the co-defendants' trials.


C. In return, the State agreed to dismiss the
pending Capital Murder indictment under Cause
No. 6988-C. 


D. This oral agreement, however, was never put in
writing.


 By his amended motion, appellant alleged that he had performed the agreement. 
Among other things, he alleged that he gave a video-taped statement on June 28, 1992,
before an assistant district attorney and two other members of the prosecutor's staff, and the
indictment was dismissed on April 20, 1993. He further asserted that although a special
prosecutor made plans to call him as a witness in the prosecution of a co-defendant, and he
was available to provide testimony, the special prosecutor decided not to call him as a
witness. Although not mentioned in appellant's motion, the State admitted that the former
prosecution team required him to submit to a polygraph examination; however, the State
claimed that the test results were inconclusive. 


 Existence of Immunity Agreement (7) 


 We begin our review of this issue by focusing on the proceedings following completion
of appellant's evidence and the State's announcement that, "We have nothing, Your Honor,
other than cross-examination." The State did not move that appellant's motion be denied
because he had not satisfied his burden of proof. Instead, the State argued: 

 we are prepared to present, in spite of the incredible evidence heard in this
hearing, that the Defendant lied with impunity throughout the video tape .
. . . The physical evidence we believe at the trial will prove this beyond a
reasonable doubt. 


(Emphasis added). In summation, contrary to the procedure prescribed in Zani, counsel for
the State requested:

 Your Honor, we would ask the State be allowed to present the evidence at trial,
and once the Court has heard all of that evidence, make a determination about
whether or not the Defendant breached the contract and therefore it was not
blinding [sic] on it [sic] state. 


(Emphasis added). By these requests, the State conceded (1) the existence of a contract,
(2) acknowledged its burden of proof to show a breach of the contract beyond a reasonable
doubt, but (3) contrary to Zani, requested that it be allowed to present its evidence at trial that
appellant breached the agreement.

 Further, although we do not generally refer to the law of contracts in reviewing criminal
appeals, because an agreement is a contract, our analysis must be based on contract law. 
See Tex. Code Crim. Proc. Ann. art. 1.27 (Vernon 1977). (8) Moreover, references to contract
law are not foreign in criminal proceedings. See generally, Speth v. State, 6 S.W.3d 530, 533
(Tex.Cr.App. 1999), cert. denied, 529 U.S. 1088, 120 S.Ct. 1720, 146 L.Ed.2d 642 (2000)
(referencing contract law where probation was granted).

 Although the State disagrees with appellant's version of the terms of the agreement,
it admits that the former prosecutor and appellant's former attorney entered into an
agreement. Considering the law of contracts discussed below, because the testimony of
former District Attorney Sherrod includes a summation of the agreement and its performance,
we need not burden this opinion with a review of the evidence provided by the other defense
witnesses. During his testimony on direct examination former District Attorney Sherrod
testified in part:

 Q. Were you aware that part of the agreement was that Sean Smith
would give a video-taped statement to your office?


 A. Evidently, that's what we decided to do. I don't remember whether
I talked to Mike Coy or John Davis, but we felt that we needed to at least see
what his testimony would be and to pin him down on what the specific facts
were that he could testify to. So, evidently, did occur, yes, sir.


 Q. As far as you are aware, has Sean Smith also been available to
testify against any of the other Co-Defendants who were indicted?


 A. Yes.

 

 Q. Was part of the determination or part of the agreement a
determination to be made by your office as to whether or not that Sean Smith
was being truthful in terms of his involvement with the Merriman situation?


 A. Yes, sir. The dilemma we were in-and it was the situation where Mr.
Brown was not going to leave this offer open forever-we had to make a
decision on whether we were going to use him or not. . . . [A]nd we stressed
to Jim that we expected his client to be truthful, but the important part,
regardless of whether his client said what he was telling was the truth or not
was how consistent what he testified to was with the evidence that we had in
the case. 

 Q. Did you eventually agree to the motion that was filed to dismiss the
indictment? Did you eventually agree that-to the motion and the subsequent
order of dismissal?


 A. Yes.


Then, on cross-examination, Sherrod summed up his testimony as follows:

 Q. The agreement was complete, but it wasn't complete if he didn't
testify?

 A. I felt like the agreement was complete when those three cases were
disposed of. I made the decision that he would not be needed in those other
cases. That was my decision. And once I signed that dismissal it was a done
deal as far as I was concerned. 


(Emphasis added). 

 The State does not contend that the immunity agreement had to be in writing, and
indeed, no statute or case imposes such a requirement. Where the parties expressly state
the terms of an agreement, they create an express contract and are bound by it to the
exclusion of conflicting implied terms. Haws & Garrett G. Con., Inc. v. Gorbett Bros. Weld.
Co., 480 S.W.2d 607, 609 (Tex. 1972); Woodard v. Southwest States, Inc., 384 S.W.2d 674,
675 (Tex. 1964). However, a contract may also be implied. In Emmer v. Phillips Petroleum
Co., 668 S.W.2d 487, 490 (Tex.App.-Amarillo 1984, no writ), we held:

 [t]he absence of an express contract does not, however, foreclose the
possibility of a contractual relationship, because the parties may, by their acts
and conduct, create an implied contract. 


As explained in Emmer, the promise is implied by law to avoid injustice and the law finds a
mutual intent to contract from the facts and circumstances of the case. Id. Considering that
the State admits the existence of an immunity agreement, the testimony of former District
Attorney Sherrod, and other evidence, even if insufficient to establish the existence of an
express contract, is sufficient to support a contract implied in fact from the facts and
circumstances of the case. Emmer, 668 S.W.2d at 490.

 Performance Under The Immunity Agreement

 The State had the burden to show beyond a reasonable doubt at the pretrial hearing
that the agreement was invalid or that prosecution should be allowed despite the agreement;
however, notwithstanding its burden of proof, the State did not present any evidence during
the pretrial hearing. Accordingly, the testimony offered by former District Attorney Sherrod
that: 

 I felt like the agreement was complete when those three cases were disposed
of. I made the decision that he would not be needed in those other cases. 
That was my decision. And once I signed that dismissal it was a done deal as
far as I was concerned 


established that appellant performed pursuant to the immunity agreement. (Emphasis
added). Without citing any authority applicable to the procedural situation presented herein,
the State suggests that we should consider the evidence introduced at trial. Applying Zani,
we disagree. Zani expressly holds: 

 [t]hus, the determination of whether the agreement is valid cannot be left for
the trial itself. If the agreement is to mean anything, such an issue must be
conclusively decided prior to trial. 


(Emphasis added). Further, because the trial court denied appellant's motion before hearing
any evidence from the State, its order denying appellant's motion was not based on the
State's evidence at trial. 

 Moreover, although appellant's counsel contended that the State had not presented
any evidence, notwithstanding the court's comment that it prohibited the State from
introducing evidence, the State:


 was a moving factor creating and inviting the error by requesting to
introduce evidence during trial; Ex parte Guerrero, 521 S.W.2d 613, 614
(Tex.Cr.App. 1975); Capistran v. State, 759 S.W.2d 121, 124
(Tex.Cr.App. 1982); see State v. Manning, 833 S.W.2d 322, 323
(Tex.App.--Waco 1992, no pet.) (holding that the doctrine of invited
error should apply to the State);


 


 did not withdraw it's request to introduce its evidence at trial or move to
re-open the evidence before the trial court denied appellant's motion;
State v. Rodriguez, 11 S.W.3d 314, 323 (Tex.App.--Eastland 1999, no
pet.); 

 did not object to the order of the hearing announced by the trial court (9)
that it had prohibited it from presenting any evidence at the pretrial
hearing and did not inform the court of the procedure announced in Zani
that all of the evidence must be heard at a pretrial hearing; and

 did not preserve error by objecting to the trial court's prohibition on the
introduction of evidence and presenting a bill of exception. Tex. R. App.
P. 33.1 (a) and 33.2.


 


A review of the pretrial evidence demonstrates that the State did not offer any evidence to
show that appellant did not perform the agreement; it does show that the former prosecutor
"felt like the agreement was complete" and that it was "a done deal" when he authorized the
dismissal of the case.

 We have not overlooked the State's contention that we should defer to the trial court's
determination of historical fact that no immunity agreement existed; however, the State does
not cite any authority applying that rule to pretrial hearings to determine the existence and
enforceability of immunity agreements and the Zani Court did not extend such deference. We
are also aware that at the time the trial court ruled on appellant's motion, the Court of Criminal
Appeals had not yet announced that the prosecutor "is responsible for crafting the conditions
of an immunity agreement" and "is in the best position to evaluate performance before and
after a dismissal." Smith, 70 S.W.3d at 855. Further, the State's contention is based on
materials from another proceeding which were not introduced into evidence at the trial court
level and although they are contained in the clerk's record, cannot be considered on appeal. 
Chambers v. State, 149 Tex. Crim. 400, 194 S.W.2d 774, 775 (1946); Webber v. State, 21
S.W.2d 726, 731 (Tex.App.--Austin 2000, pet. ref'd). 

 In light of the following: (1) the Court's announcement in Smith that a prosecutor is
responsible for drafting immunity agreements and evaluating performance thereunder, (2)
Zani's requirement that immunity agreements be strictly enforced and the proper procedure
for doing so, (3) the State's announcement at the pretrial hearing that,"[w]e have nothing,
Your Honor, other than cross-examination," and (4) the evidence presented by appellant at
the pretrial hearing, we hold that no rational trier of fact could have found that an immunity
agreement did not exist and that appellant did not perform pursuant to that agreement. Thus,
we conclude the agreement was enforceable. Accordingly, appellant's first and third issues
are sustained and our consideration of issue two is pretermitted.

 Accordingly, based upon our analysis of the two issues we were directed to consider
upon remand by the Court of Criminal Appeals, the judgment of the trial court is reversed and
a judgment of acquittal is hereby rendered.


 Don H. Reavis

 Justice


Publish.

 


 

1. In our prior opinion, we distinguished Zani noting that the district judges who approved
the written immunity agreement were aware of its specific terms. Smith, 979 S.W.2d at 382. 
Now, because the Court of Criminal Appeals has held that under article 32.02 knowledge of
the specific terms of the agreement is not essential for it to be enforceable, the factual
distinctions we suggested in our first opinion do not render Zani inapplicable.
2. From our review of the record, it does not appear that the trial court made a ruling on
the State's request.
3. The record does not show what was before the trial court when it prohibited the State
from presenting testimony. 
4. According to Zani, the terms of an agreement are bargained for by the State and thus,
the question to be determined is whether the State, not the court, is bound by the contract. 
701 S.W.2d at 254-55.
5. This the 17th day of September, 1996, the foregoing Defendant's Amended Motion
to Enforce Agreement with Prosecutor having been presented to and considered by the
Court, it is the opinion of the Court that said Motion should be Denied. 

 It is THEREFORE ORDERED that said Motion to Enforce Agreement with
Prosecutor be DENIED.
6. According to the opinion of the Court of Criminal Appeals, the State neither responded
to the petition nor cross-petitioned and the State's argument that appellant violated the
immunity agreement would not be considered for the first time on discretionary review.
7. In our analysis of this issue, we consider only the evidence that was presented at the
pretrial hearing. Zani, 701 S.W.2d at 254.
8. Article 1.27 provides: "If this Code fails to provide a rule of procedure in any particular
state of case which may arise, the rule of the common law shall be applied and govern."
9. The record does not reflect what evidence the State proposed to introduce which the
trial court "stopped Mr. Farren from doing."