Affirmed and Memorandum Opinion filed October 1, 2009.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-08-00245-CV

_______________

 

THERESA LEIGH, Appellant

 

V.

 

RICHARD KUENSTLER JR., Appellee

                                                     
                                                                                          

On Appeal from the 55th
District Court

Harris County, Texas

Trial Court Cause No. 2006-48922

                                                               
                                                                                

 

M E M O R A N D U M    O P I N I O N

After an automobile accident with an underinsured motorist, appellant Theresa
Leigh sued the other driver, her own automobile insurers, and her insurance
agent, Richard Kuenstler Jr.  As relevant to this appeal, she alleged that
Kuenstler was negligent and acted unconscionably in failing to obtain
uninsured/underinsured motorist coverage in an amount at least equal to her
primary insurance policy=s liability limits.  She further alleged that Kuenstler
violated the Deceptive Trade Practices-Consumer Protection Act (the ADTPA@) and the Texas Insurance Code by
misrepresenting the terms of her insurance policies.  The trial court granted
summary judgment in Kuenstler=s favor, and Leigh timely appealed.  We  affirm.








I.  Factual
and Procedural Background

Leigh first contacted Kuenstler about obtaining automobile insurance in
December 1999.  As Leigh later testified, she did not request coverage in any
particular amount, but instead told Kuenstler, AI wanted coverage at least what my
parents had [sic].@  Leigh did not verify the amount of automobile insurance
coverage her parents had purchased, and admittedly had Ano idea@ about the coverage her parents
actually had requested from Kuenstler.  She gave Kuenstler no other
instructions, and when she received each outline of renewal coverage, she Ajust didn=t pay attention to it.@

According to her live pleadings, the automobile insurance policies
procured by Kuenstler from Southern Farm Bureau Casualty Company (ASouthern Farm Bureau@) afforded her liability coverage of
$300,000 per person and $500,000 per occurrence.  In addition, Kuenstler had
procured an uninsured/underinsured motorist (AUM/UIM@) policy for Leigh with coverage
limits of $50,000.  In contrast, Leigh=s parents had only $20,000 in UM/UIM
coverage.  Leigh also was covered by a $1 million umbrella policy issued by
Texas Farm Bureau Mutual Insurance Company (ATexas Farm Bureau@).  Although she believed that the
umbrella policy would afford coverage for her own medical expenses and damages
she sustained as the result of an automobile accident with an underinsured
motorist, Leigh admits that she simply assumed this to be the case.  In fact,
the umbrella policy afforded coverage only for Leigh=s liability, and not for her own
damages. 

On September 18, 2004, Leigh was injured in an automobile accident with
underinsured motorist Ashton Von Blon.  Leigh sued Von Blon, Von Blon=s parents, Southern Farm Bureau,
Texas Farm Bureau, and Kuenstler.  As relevant to this appeal, Leigh alleged
that Kuenstler (1) was negligent in failing to obtain UM/UIM coverage in
an amount at least equal to the policy limits of her liability insurance, and
(2) violated the DTPA and the Texas Insurance Code by misrepresenting the
terms of the insurance policies and by unconscionably failing to ensure that
her UM/UIM coverage was at least equal to the policy limits provided by her
primary liability policy.








Kuenstler initially moved for traditional summary judgment on the sole
ground that he had no common-law or statutory duty to offer Leigh UM/UIM
insurance in excess of the statutory minimum,[1]
and thus, no duty to offer her more than the $50,000 in UM/UIM coverage that he
actually procured.[2]  In her
response, Leigh argued that it would be improper to grant Kuenstler summary
judgment because, inter alia, he did not move for judgment on her claim
that Kuenstler Abreached his contract with her to obtain the highest
coverages available consistent with her requested liability limits of $300,000
per person and $500,000 per occurrence.@  The record contains no pleadings on
file at the time in which Leigh asserted such a claim; however, Kuenstler filed
a reply memorandum in which he represented that three weeks after he moved for
summary judgment, Leigh filed a Second Amended Petition adding a claim for
breach of contract.[3]  Kuenstler
further argued in his reply that (1) no such contract was formed;
(2) if a contract to procure insurance for Leigh existed, then Kuenstler
fulfilled his contractual duty by procuring insurance that provided her with
more coverage than her parents had; and (3) there is no evidence that he
breached a contract with Leigh.  On July 9, 2007, the trial court denied the
motion without prejudice to the filing of further motions.








Although Kuenstler did not submit a second summary-judgment motion, the
trial court granted final judgment disposing of all claims and all parties on
August 14, 2007.  Despite the existence of a final judgment against Leigh,
Kuenstler then filed a motion to re-urge his earlier summary-judgment motion,
together with a supplemental memorandum in support of summary judgment.  In the
latter, Kuenstler stated that he incorporated his original and reply
memorandums, and he repeated his argument that he fulfilled his only duty to
Leigh by procuring the coverage she requested.  Leigh moved for new trial and
filed a response to Kuenstler=s motion.

On October 2, 2007, the trial court vacated its previous judgment,
partially granted Leigh=s motion for new trial, and reconsidered and granted
Kuenstler=s summary-judgment motion.  As a result of this order, only Leigh=s claims against Ashton Von Blon and
her breach-of-contract claim against Southern Farm Bureau remained in the
case.  Leigh subsequently dismissed her claims against Southern Farm Bureau,
and pursuant to her motion to nonsuit, the trial court dismissed Von Blon from
the suit.  As a result of this order, the summary judgment in Kuenstler=s favor became final.  Leigh then
filed a second motion for new trial, which the trial court denied, and this
appeal ensued.

II.  Issue Presented

In the dispositive issue presented on appeal, Leigh contends the trial
court erred in granting Kuenstler=s motion for summary judgment.[4]


III.  Standard of Review








We review summary judgments de novo,  Valence Operating Co. v. Dorsett,
164 S.W.3d 656, 661 (Tex. 2005), and where the trial court grants the
summary-judgment motion without specifying the grounds, we affirm the judgment
if any of the grounds presented are meritorious.  FM Props. Operating Co. v.
City of Austin, 22 S.W.3d 868, 873 (Tex. 2000).  We consider all grounds
the appellant preserves for review that are necessary for final disposition of
the appeal.  See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d 623, 626
(Tex. 1996). 

In a traditional motion for summary judgment, the movant has the burden
of showing that there is no genuine issue of material fact and it is entitled
to judgment as a matter of law.  Tex. R.
Civ. P. 166a(c); Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425
(Tex. 1997).  To be entitled to traditional summary judgment, a defendant must
conclusively negate at least one essential element of each of the plaintiff=s causes of action or conclusively
establish each element of an affirmative defense.  Sci. Spectrum, Inc. v.
Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Evidence is conclusive only if
reasonable people could not differ in their conclusions.  City of Keller v.
Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  Once the defendant establishes
its right to summary judgment as a matter of law, the burden shifts to the
plaintiff to present evidence raising a genuine issue of material fact.   City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678B79 (Tex. 1979).

IV.  Analysis

A.        Common-Law Negligence








A cause of action for negligence requires a legal duty owed by one person
to another, a breach of that duty, and damages proximately caused by the
breach.  D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002). 
Under well-established Texas law, an insurance agent who undertakes to procure
insurance for another owes his client the common-law duties to use reasonable
diligence in attempting to place the requested insurance and to inform the
client promptly if he is unable to do so.  May v. United Servs. Ass=n of Am., 844 S.W.2d 666, 669 (Tex. 1992); Sonic
Sys. Int=l, Inc. v. Croix, 278 S.W.3d 377, 389 (Tex. App.CHouston [14th Dist.] 2008, pet.
filed).  The agent has no duty to extend the client=s insurance protection merely because
the agent may know of the client=s need for additional insurance,
especially in the absence of evidence of prior dealings in which the agent
customarily has attended to the client=s insurance needs without consulting
her.  McCall v. Marshall, 398 S.W.2d 106, 109 (Tex. 1965); Critchfield
v. Smith, 151 S.W.3d 225, 230 (Tex. App.CTyler 2004, pet. denied); Moore v.
Whitney-Vaky Ins. Agency, 966 S.W.2d 690, 692 (Tex. App.CSan Antonio 1998, no pet.). 

According to the uncontroverted summary-judgment evidence, Leigh
requested from Kuenstler only that he procure insurance coverage in an amount
at least equal to the coverage provided to Leigh=s parents under their automobile
insurance policies.  Leigh=s parents had $20,000 in UM/UIM coverage; Kuenstler procured
$50,000 in UM/UIM coverage for Leigh.  Thus, he fulfilled his common-law duty
to Leigh, and as a matter of law, he had no duty to do more.       








Leigh argues that the affidavit of her expert, Roy L. Phillips, raises a
genuine issue of material fact on the question of whether Kuenstler owed her a
duty to procure UM/UIM coverage in an amount equal to her liability coverage. 
But the existence of a duty is not a question of fact but a question of law for
the court to decide Afrom the facts surrounding the occurrence in question@;[5]
thus, our analysis is unaffected by Phillips=s affidavit.  Moreover, his
conclusions, which are contrary to governing law, are based at least in part on
assumptions that are contrary to the undisputed facts.[6] 
See Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex. 1995) (AWhen an expert=s opinion is based on assumed facts
that vary materially from the actual, undisputed facts, the opinion is without
probative value and cannot support a verdict or judgment.@); see also Burrow v. Arce,
997 S.W.2d 229, 236 (Tex. 1999) (explaining that an expert opinion with no
demonstrable basis lacks probative value).

We conclude that the trial court did not err in granting summary judgment
in Kuenstler=s favor on Leigh=s common-law negligence claim, and we overrule Leigh=s appellate issue as it pertains to
this cause of action.

B.        Breach of Implied Contract

Regarding her contract claim, Leigh argues on appeal that the trial court
erred in granting summary judgment because a conflict in the testimony creates
a genuine issue of material fact Aas to what coverages she wanted and
what she was told@ by Kuenstler.  According to Leigh, Kuenstler testified that
he told Leigh she could increase her UM/UIM coverage limits to match the limits
of her liability coverage, whereas she denied that he made such a statement. 
Her argument that this purported conflict in the testimony precluded summary
judgment is unpersuasive on both evidentiary and legal grounds.  








First, as a simple factual matter, Leigh did not deny that Kuenstler told
her she could increase her UM/UIM policy limits to match her liability
coverage; to the contrary, she testified repeatedly that she had no
recollection of their conversation and agreed that Aif [she] were to try to describe
accurately the content of any of those conversations, [she would] have to just
speculate about it.@[7]  In response to Kuenstler=s summary-judgment motion, Leigh
filed an affidavit in which she stated she did not recall Kuenstler telling her
that she could purchase UM/UIM coverage in the same amount as her primary
liability policy limits.  She further stated, AI don=t think he told me about this option
because if he had told me that I could purchase that coverage for a mere $38.00
more in premiums every 6 (six) months, I would have done it in a minute.@  But this testimony actually is
consistent with Kuenstler=s testimony, because Kuenstler testified that Leigh did not
ask and he did not volunteer information regarding the difference in premiums
for a higher level of coverage. 

Second, the testimony at issue does not concern a material fact.  A fact
is Amaterial@ for summary-judgment purposes only
if it affects the outcome of the suit under the governing law.  Lampasas v.
Spring Ctr., Inc., 988 S.W.2d 428, 433 (Tex. App.CHouston [14th Dist.] 1999, no pet.). 
Because Kuenstler had no duty to offer Leigh UM/UIM coverage in an amount equal
to her primary liability policy limits, his failure to do so would not have
breached a duty. 








Repeating the substance of the arguments presented in connection with her
common-law negligence claim, Leigh next asserts that Phillips=s affidavit constitutes Auncontroverted proof that an
insurance agent has a duty to obtain UM/UIM coverage in the same amount as the
primary liability policy.@  She further contends that Athe long standing [sic] relationship
between the Leigh family and Kuenstler=s agency, together with [Leigh=s] testimony, create a fact question
as to whether Kuenstler=s failure to obtain UM/UIM coverages which matched [Leigh=s] primary limits breached the
implied term of the contract between the parties to procure appropriate
coverages@ for her.  As previously discussed, however, Kuenstler had no such duty
under the common law, and Leigh does not contend that Kuenstler expressly
agreed to procure UM/UIM insurance for Leigh in that amount.  Although she
suggests on appeal that the trier of fact could imply such a term to the parties= agreement, it is undisputed that she
signed an application for insurance requesting coverage in the amounts actually
procured.  Her argument therefore must fail, because A[i]f the parties have expressly
stated the terms of their agreement, they have created an express contract and
are bound by it to the exclusion of conflicting implied terms.@  Emmer v. Phillips Petroleum Co.,
668 S.W.2d 487, 490 (Tex. App.CAmarillo 1984, no writ).

           We
conclude that the trial court did not err in granting summary judgment in
Kuenstler=s favor on Leigh=s contract claim.  We therefore overrule the issue presented
as it pertains to this cause of action.

C.        Insurance Code Violation

Lastly, Leigh argues that the trial court erred in granting summary
judgment in Kuenstler=s favor on Leigh=s claim that he violated section
541.061 of the Texas Insurance Code.  See Tex. Ins. Code Ann. ' 541.061 (Vernon 2009).[8] 
This section provides in pertinent part that A[i]t is an unfair method of
competition or an unfair or deceptive act or practice in the business of
insurance to misrepresent an insurance policy by . . . failing to state a
material fact necessary to make other statements made not misleading,
considering the circumstances under which the statements were made . . . .@  Id. ' 541.061(2).  Leigh asserts that
Kuenstler violated this statute by failing to tell her that (1) in the event of
an accident with an uninsured or underinsured motorist, the umbrella policy
would not Adrop down@ to cover damages she sustained in excess of her UM/UIM
policy limits; and (2) she could purchase UM/UIM insurance with the same
coverage limits as those provided in her primary liability policy.  According
to Leigh, these omissions led her to believe that she was Afully covered in excess of [one]
million dollars because of the umbrella policy.@  








Leigh identifies no statements by Kuenstler that were misleading absent
explanations of the coverage provided by the umbrella policy and the
availability of UM/UIM insurance with higher policy limits; to the contrary,
she testified that she Ajust thought@ that the umbrella policy would provide coverage for the same
expenses covered by the UM/UIM policy, and she admitted that this was simply an
assumption on her part.  But see Moore, 966 S.W.2d at 692B93 (explaining that, A>[i]n the absence of some specific
misrepresentation by the insurer or agent about the insurance, a policyholder=s mistaken belief about the scope or
availability of coverage is not generally actionable=@ under the DTPA or the Insurance Code
(quoting Sledge v. Mullin, 927 S.W.2d 89, 94 (Tex. App.CFort Worth 1996, no writ))).  Her
appellate argument does not address the evidence, but instead consists of a
nearly-verbatim recital of the allegations made in her Third Amended Petition,
unsupported by citations to the record or to authority.  We therefore conclude
that Leigh has waived her contention that the trial court erred in granting
summary judgment on her claim that Kuenstler violated section 541.061 of the
Insurance Code.  See Tex. R. App.
P. 38.1(i) (requiring appellants to support their arguments with
appropriate citations to authorities and to the record); Trenholm v.
Ratcliff, 646 S.W.2d 927, 934 (Tex. 1983) (holding that issues unsupported
by argument and authorities are waived).

V. 
Conclusion

For the foregoing reasons, we hold that Kuenstler established his entitlement
to judgment as a matter of law on Leigh=s claims of negligence and breach of
contract, and Leigh=s challenge to the judgment on her statutory claims is
waived.  We therefore affirm the trial court=s judgment. 

 

 

/s/        Eva M. Guzman

Justice

 

 

Panel
consists of Justices Anderson, Guzman, and Boyce. 









[1]  At all times relevant to this appeal, motorists were
required by statute to carry motor vehicle liability insurance with coverage
limits of at least $20,000 per person and $40,000 per occurrence for bodily
injury or death and $15,000 per occurrence for property damage.  See Act
of May 1, 1995, 74th Leg., R.S., ch. 165, ' 1,
1995 Tex. Gen. Laws 1025, 1710 (amended 2007) (current version at Tex. Transp. Code Ann. ' 601.072 (Vernon Supp. 2008)).





[2]  Kuenstler=s
summary-judgment motion is actually entitled ADefendant=s, Richard J. Kuenstler, Jr., Memorandum in Support of
his Traditional Motion for Summary Judgment [sic].@  In the document=s
introduction and in its certificate of service, Kuenstler again refers to it as
a AMemorandum in Support of his Traditional Motion for
Summary Judgment.@  Nevertheless, Leigh has never asserted that the document
is a brief rather than a motion.  To the contrary, the parties have stipulated
that this document is the motion for summary judgment at issue and is simply
improperly titled.  We therefore treat the document as a summary-judgment
motion just as the parties have done.   See Tex. R. Civ. P. 71 (AWhen
a party has mistakenly designated any plea or pleading, the court, if justice
so requires, shall treat the plea or pleading as if it had been properly
designated.@).





[3]  The Second Amended Petition is not in the record.





[4]  Leigh also presents a second issue in which she
asks, AWhat is an insurance agent=s duty to his insured in connection with making sure
that the uninsured/underinsured policy limits match the primary limits of
liability coverage?@  This issue appears to correspond to Leigh=s argument that Kuenstler had a duty to recommend or
procure UM/UIM coverage for her in an amount equal to the coverage limits of
her primary liability policy, and thus, the trial court erred in granting
summary judgment in Kuenstler=s favor.  We
therefore conclude that Leigh=s second issue
is subsumed in her first issue. 





[5]  Centeq Realty, Inc. v. Siegler, 899 S.W.2d
195, 197 (Tex. 1995).  





[6]  In his affidavit, Phillips attested in pertinent
part as follows:

It is my opinion that an Agent is responsible for
providing the same Uninsured/Underinsured Motorist limits as those of the Bodily
Injury and Property Damage under the Texas Personal Auto Policy.

It is important to recognize that the Leigh family has
been a client of the defendant Agent for many years. . . .  This special
relationship with the Leigh family, in my opinion, carries with it a
responsibility to assure that the policies provided to the Plaintiff meets
[sic] the standard of care that we have described as being taught in the
insurance industry. . . .  

It is my opinion that the Insured did not have an
understanding of the difference between Liability to third parties, and
first[-]party coverage for damages cause[d] by an Uninsured/Underinsured
motorist[.] This, in my opinion, constitutes an unleveled field of knowledge to
the detriment of the Insured.  

It is therefore my opinion that the Defendant did not
meet the standard of care expected of a prudent agent in the State of Texas
arising from the same or similar circumstances.

The record, however,
contradicts Phillips=s assumption that Leigh and her family had been
Kuenstler=s clients Afor
many years@ so as to create Aa
special relationship with the Leigh family.@ 
Leigh=s own testimony establishes that she had no
relationship with Kuenstler before 1999.  In addition, her insurance
application contains an area for AAgent=s Representation@ in
which Kuenstler was asked, AHow long have
you known applicant?@  Kuenstler responded that he had known Leigh for less
than a year, and Leigh signed the application directly below the statement, AI declare the foregoing statements to be true to the
best of my knowledge and belief . . . .@  Leigh further testified that she never met Kuenstler
in person before she filed this suit.  She does not allege that Kuenstler has a
fiduciary relationship with her, and she has never claimed that she
communicated to him the extent to which she understands or fails to understand
insurance issues. 





[7]  Leigh testified, AI
don=t remember anything about the conversation.  I mean it
was B I just remembered that I needed car insurance.@  AI have no idea
what I said.  I think I B I have no idea.  I mean I don=t remember the conversation.@  AI told him B I think this is what I told him B that I wanted coverage at least what my parents had,
because I just assumed that my parents would be carried at the highest.@ 





[8]  Although Leigh argued in her second motion for new
trial that Kuenstler did not move for summary judgment on this claim, she does
not raise this argument on appeal, and we cannot reverse a judgment in a civil
case based on unassigned error.  See Pat Baker Co. v. Wilson, 971 S.W.2d
447, 450 (Tex. 1998) (per curiam); Exxon Mobil Corp. v. Hines, 252
S.W.3d 496, 507 (Tex. App.CHouston [14th
Dist.] 2008, pet. denied).