**Affirmed and Opinion filed March 14, 2013.**



**In The**

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

---

### NO. 14-12-00088-CV

---

**MARCUS HILES, Appellant.**

**V.**

**ARNIE & COMPANY, P.C., Appellee.**

---

**On Appeal from the 270th District Court**
**Harris County**
**Trial Court Cause No. 2010-42061**

---

### O P I N I O N

Marcus Hiles appeals from a trial-court judgment incorporating a jury verdict in favor of Arnie & Company, P.C., in Arnie's suit on a sworn account. On appeal, Hiles complains that he filed suit against Arnie in Dallas County before Arnie filed suit in Harris County, and because the Dallas County court had dominant jurisdiction, the trial court erred in refusing to transfer, abate, or dismiss Arnie's suit. Hiles also contends that the trial court erred by refusing Hiles's

tendered jury instruction concerning whether Arnie's prior material breach excused Hiles's performance. For the reasons explained below, we affirm.

I

Hiles is a real-estate investor and developer who lives in Fort Worth and offices in Grand Prairie. Hiles became involved in litigation arising out of a partnership dispute over a large real-estate project in Tyler known as the Cascades. Hiles believed he was losing millions of dollars on the Cascades project and suspected his partners had engaged in some kind of "funny business." Hiles's counsel, the law firm of Coats, Rose, Yale, Ryman & Lee, L.L.P., and its partner, Bill Short, recommended retaining Arnie & Company, located in Houston, to conduct a forensic accounting review of the Cascades's records. Arnie's president, Dennis Arnie, is a CPA and certified fraud examiner. Dennis had worked with Coats Rose on many other cases.

Hiles agreed that Coats Rose could retain Arnie to assist in the Cascades litigation. Coats Rose and Hiles each signed an engagement letter Arnie drafted. Hiles also modified the letter, interlineating "and/or Hiles" at the end of the sentence "Your engagement of [Arnie] is at the will and discretion of Coats Rose." The engagement letter set out the hourly rates for Arnie personnel, provided for an "evergreen" retainer of $20,000, and reflected that Hiles was "solely liable for any fees incurred in this matter." The engagement letter also included a venue-selection clause specifying that the venue of any litigation or arbitration "SHALL LIE SOLELY AND EXCLUSIVELY IN HARRIS COUNTY, TEXAS[,] UNLESS MANDATORY VENUE RULES OR LAWS PROVIDE THAT VENUE MUST LIE IN ANOTHER COUNTY."

Arnie personnel conducted an extensive review of the Cascades's records and determined, as Hiles suspected, that his partners were committing fraud. The

2

damage model amounted to about $10 million. But Coats Rose and Hiles disagreed on the best way to make use of Arnie's work. Short did not want Arnie to prepare a report, preferring instead to surprise the adverse parties with Arnie's opinions at trial; Hiles, however, instructed Dennis to prepare a report that Hiles could use as leverage at mediation. On April 29, 2010, Dennis met with Hiles at his office to discuss the details of the report and to drop off some unpaid invoices. Dennis also gave Hiles the option of either a short report highlighting a few significant transactions or a detailed report describing every allegedly fraudulent transaction discovered.

Hiles did not immediately decide which report he wanted, but the next day he left Dennis a voicemail directing him to prepare the detailed report. In the voicemail, which Dennis transcribed, Hiles also communicated an understanding that the additional work needed to compile the report would be minimal, requiring only "a little extra staff time" to type up the report and attach the exhibits. On May 4, Hiles confirmed in an email that he wanted Dennis to complete the "full written report" by May 12. According to Dennis, he never told Hiles that preparing the report would be simply a matter of administrative time, although he did not recall specifically correcting any misunderstanding on Hiles's part.

On May 12, Dennis delivered a draft of the report, titled "Analysis of Economic Damages and Related Events," to Hiles.[1] The report totaled twenty-three pages and was supported by over 400 pages of attached documentation. Hiles was pleased with the report, and he instructed Short to distribute copies of the report to all opposing counsel in the Cascades litigation. The Cascades litigation was ultimately resolved.

---

[1] Dennis also testified that he hand delivered to Hiles an invoice for $91,185.68 for Arnie's work in April, and Hiles said that he would send the invoice to the accounting department and it would be paid.

In early June, Arnie sent Hiles the bill for its work during the month of May in the amount of $76,199.74. Less than two weeks later, Hiles responded to Arnie's bill by filing suit against Arnie in Dallas, alleging breach of contract and seeking declaratory relief.[2]

On July 8, 2010, after Arnie was served with Hiles's suit, Arnie filed suit against Hiles in Houston for unpaid bills totaling $364,502.00 on a sworn-account theory. After substituted service of citation was ordered in September, Hiles answered Arnie's suit subject to a motion to transfer venue.[3] On December 16, the trial court denied Hiles's motion to transfer venue. On January 21, 2011, Hiles filed a motion to abate Arnie's Harris County suit, and re-urged his motion to abate in September 2011.[4] The trial court denied the motion to abate and the case proceeded to trial.

At the end of the trial, the jury returned a verdict in Arnie's favor. On October 7, 2011, the trial court rendered judgment on the jury's verdict, awarding Arnie actual damages of $364,502.41 and attorney's fees in excess of $200,000. This appeal followed.

II

In his first issue, Hiles contends that the trial court erred in refusing to

---

[2] Hiles appeared as a plaintiff along with Western Rim Investors 2006-3, L.P., Western Rim Investors 2006-4, L.P., Western Rim Investors 2006-5, L.P., Western Rim Investors 2007-1, LP., Mansions Custom Homes III, LP, Cascades of Tyler Joint Venture, L.L.P., and Cascades of Tyler Homes Joint Venture, L.L.P. In addition to suing Arnie, the plaintiffs sued the Coats Rose law firm, Short, and another retained expert. However, Hiles and Arnie are the only parties to this appeal.

[3] Arnie also filed two amended pleadings subject to a motion to transfer venue raising the same arguments on November 12, 2010, and June 22, 2011.

[4] Exhibits to motions filed in this case reflect that the Dallas court denied a motion to transfer venue filed by Arnie, but the court also denied Hiles's motion to consolidate the Houston and Dallas cases and impose an anti-suit injunction against Arnie. The Dallas court also denied Hiles's motion for reconsideration. Consequently, the cases proceeded simultaneously in both courts.

transfer, abate, or dismiss the Harris County suit. Hiles makes three primary arguments: (1) the venue-selection clause in Arnie's engagement letter is unenforceable; (2) Hiles filed suit first in a proper venue and therefore the Dallas County court had dominant jurisdiction; and (3) no exception to dominant jurisdiction applies.

A

Section 15.002(a)(1) of the Civil Practices and Remedies Code provides that venue for an action is proper in the county in which "all or a substantial part of the events or omissions giving rise to the claim occurred." Tex. Civ. Prac. & Rem. Code § 15.002(a)(1). Venue may be proper in more than one county under the venue rules. *See Wilson v. Tex. Parks and Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994); *Moveforfree.com, Inc. v. David Hetrick, Inc.*, 288 S.W.3d 539, 542 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In general, plaintiffs are allowed to choose venue first, and when the county in which the plaintiff files suit is at least a permissive venue and no mandatory provision applies, the plaintiff's venue choice should not be disturbed. *KW Constr. v. Stephens & Sons Concrete Contractors, Inc.*, 165 S.W.3d 874, 879 (Tex. App.—Texarkana 2005, pet. denied); *Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 678 (Tex. App.—Austin 2003, no pet.). Thus, "[t]he court in which suit is first filed generally acquires dominant jurisdiction to the exclusion of other courts *if* venue is proper in the county in which suit was first filed." *Gonzalez v. Reliant Energy, Inc.*, 159 S.W.3d 615, 622 (Tex. 2005) (emphasis in original) (citing *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 248 (Tex. 1988)).

Filing a plea in abatement is the proper method for drawing a court's attention to another court's possible dominant jurisdiction. *In re Puig*, 351 S.W.3d 301, 305 (Tex. 2011) (per curiam); *Wyatt*, 760 S.W.2d at 247–48; *Curtis v. Gibbs*,

5

511 S.W.2d 263, 267 (Tex. 1974). Generally, the plea in abatement must be granted when an inherent interrelation of the subject matter exists in the two pending lawsuits. *Perry v. Del Rio*, 66 S.W.3d 239, 252 (Tex. 2001); *Wyatt*, 760 S.W.2d at 247. Abatement of a suit due to the pendency of a prior suit is based on the principles of comity, convenience, and the necessity for an orderly procedure in the trial of contested issues. *Miles v. Ford Motor Co.*, 914 S.W.2d 135, 138 (Tex. 1995) (per curiam); *Wyatt*, 760 S.W.2d at 248.

But exceptions to this "first-filed" rule may apply when its justifications fail, as when the first court does not have the full matter before it, when conferring dominant jurisdiction on the first court will delay or even prevent a prompt and full adjudication, or "when the race to courthouse was unfairly run." *Perry*, 66 S.W.3d at 252. Thus, a plaintiff who filed the first suit may be estopped from asserting the dominant jurisdiction of the first court if it is found that he is guilty of inequitable conduct. *Wyatt*, 760 S.W.2d at 248; *V.D. Anderson Co. v. Young*, 101 S.W.2d 798, 800 (Tex. 1937).

Texas courts have found parties guilty of inequitable conduct and applied the estoppel exception to the first-filed rule when the plaintiffs in the first-filed suit (1) filed suit merely to obtain priority, without a bona fide intention to prosecute the suit; or (2) prevented their adversaries from filing the subsequent suits more promptly by fraudulently representing that they would settle. *In re Henry*, 274 S.W.3d 185, 191 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). Courts have also found inequitable conduct when the plaintiffs in the first-filed suit affirmatively represented to the court in the second-filed suit that it had jurisdiction, *Howell v. Mauzy*, 899 S.W.2d 690, 698 (Tex. App.—Austin 1994, writ denied), or manipulated the courts by sitting in silence while sister courts

6

issued conflicting orders regarding the same subject matter. *Grimes v. Harris*, 695 S.W.2d 648, 651–52 (Tex. App.—Dallas 1985, orig. proceeding).

When raised, estoppel is a fact issue that must be determined by the second court in which the plea in abatement is filed. *Curtis*, 511 S.W2d at 267; *In re Henry*, 274 S.W.3d at 191; *see also Parr v. Hamilton*, 437 S.W.2d 29, 31 (Tex. Civ. App.—Corpus Christi 1968, no writ) ("The question of good faith, fraud and conduct of a party relating to the matter of estoppel is a fact issue that must be finally determined by the court hearing the plea in abatement."). If the second court denies the plea in abatement, it assumes dominant jurisdiction and its ruling postpones the action in the first court until the second court finally disposes of the case. *4M Linen & Unif. Supply Co. v. W.P. Ballard & Co., Inc.*, 793 S.W.2d 320, 322 (Tex. App.—Houston [1st Dist.] 1990, writ denied).

A party also must raise a plea in abatement in a timely manner or it is waived. *Wyatt*, 760 S.W.2d at 248; *Howell*, 899 S.W.2d at 698. If the second court has jurisdiction over the subject matter and a party does not file a plea in abatement in the second court at the proper stage, the second court can determine the issues before it and a judgment in the second court may have preclusive effect on the pending proceeding in the other court. *Mower v. Boyer*, 811 S.W.2d 560, 563 n.2 (Tex. 1991).

We review a trial court's ruling on a motion to abate under an abuse-of-discretion standard. *See Wyatt*, 760 S.W.2d at 248. An abuse of discretion occurs when a trial court acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985).

B

In his motion to abate, Hiles asserted that the Harris County suit should be

7

abated because he filed and served the Dallas County suit first, the Dallas County suit remained pending, and both suits involved many of the same parties and issues.[5] Attached in support of Hiles's motion were copies of Hiles's original and amended petition in the Dallas County suit, proof of citation of service on Arnie, Arnie's original petition in the Harris County suit, and the affidavit of Hiles's counsel attesting that the copies were true and correct and stating that the Dallas County suit was pending as of the date of his affidavit.

In response to Hiles's motion to abate, Arnie did not dispute Hiles's assertions that Hiles filed suit first and the two actions were interrelated. Arnie did argue, however, that Hiles was estopped from abating the Harris County suit because he contractually agreed to venue in Harris County, he evaded service in the Harris County suit, and he waived abatement by not filing the motion to abate for five months.[6] In support of its response, Arnie attached various documents including copies of its engagement letter containing the venue-selection provision; the order for substituted service on Hiles in the Harris County suit; the affidavit of the investigator detailing his unsuccessful efforts to serve Hiles with Arnie's

---

[5] In a second motion to abate filed shortly before the trial in the Harris County suit was to commence, Hiles additionally argued that Arnie had filed compulsory counterclaims in the Dallas court seeking the same fees and expenses sought in the Harris County suit without noting any objection or reservation, and therefore it had subjected itself to the jurisdiction of the Dallas court. In response, Arnie argued that the trial in Harris County had been reset and so Arnie filed the compulsory counterclaims in Dallas to preserve its rights and comply with the Dallas court's pleadings deadlines. On appeal, Hiles argues that Arnie waived any complaint to the Dallas County venue by filing its counterclaims in the Dallas court. But Hiles cites no relevant authorities in support of that argument and so we do not consider it. *See* Tex. R. App. P. 38.1(i) (providing appellant's brief must contain clear and concise argument for contentions made, with appropriate citations to authorities and record); *Brown v. Hearthwood II Owners Ass'n, Inc.*, 201 S.W.3d 153, 161 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (recognizing that failure to cite authority or advance substantive analysis waives appellate issue).

[6] Although Arnie also argued that Hiles "delayed Arnie's filing suit in Harris County by conveying a false impression that they would pay Arnie's invoices," none of the attached documents support this statement.

lawsuit; Dennis's affidavit stating that Hiles signed the engagement letter and reciting facts supporting permissive venue in Harris County; and an email forwarding a copy of Arnie's invoice for March to Hiles.

After an oral hearing, the trial court denied the motion to abate. No record of the hearing appears in the appellate record.

On appeal, Hiles contends that the estoppel exception to dominant jurisdiction does not apply in this case because (1) it was not inequitable for Hiles to have signed Arnie's engagement letter containing the venue-selection clause specifying Harris County because that clause is unenforceable; (2) the allegation that he evaded service is not relevant to the equities involved in his earlier filing of the Dallas County suit; and (3) Hiles did not waive abatement. Arnie responds that it raised factual issues supporting estoppel and inequitable conduct in opposing Hiles's motion to abate, and the trial court did not abuse its discretion in resolving these fact issues in Arnie's favor.

As an initial matter, Arnie argues that this court cannot overturn the trial court's discretionary decision in the absence of a record of the hearing on Hiles's motion to abate. According to Arnie, the record supports the conclusion that the hearing was evidentiary, and therefore it was Hiles's burden to present the record of that hearing. In the absence of such a record, Arnie argues, this court must presume that evidence existed to support the trial court's decision. Arnie also claims that its counsel made unsworn, factual statements and representations in the hearing, which "can constitute evidence supporting a trial court's ruling."[7]

---

[7] Arnie also points to Dennis's testimony at trial that Hiles assured Dennis that Arnie's invoices would be paid, used the report to his advantage, and never voiced any complaint about the bills before filing suit. However, Hiles contends that we may not consider Dennis's trial testimony when determining whether the trial court erred in denying the motion to abate. We agree. "When an appellate court is called upon to revise the ruling of a trial court, it must do so

In *Michiana Easy Livin' Country, Inc. v. Holten*, the supreme court instructed that appellate courts should presume that pretrial hearings are non-evidentiary unless the proceeding's nature, the trial court's order, the party's briefs, or other indications show that an evidentiary hearing took place in open court. 168 S.W.3d 777, 783 (Tex. 2005). Only if the hearing was evidentiary is a complaining party required to present a record of that hearing to establish harmful error. *Id.* The trial court's order denying Hiles's motion to abate provides no affirmative indication of an evidentiary hearing, reflecting only that the court considered Hiles's motion and Arnie's response, as well as "any further replies or responsive pleadings, the discovery on file, the pleadings, the evidence, and the arguments of counsel, if any . . . ." Further, nothing else in the record suggests an evidentiary hearing took place. We conclude, therefore, that Hiles was not required to present the record of the hearing on appeal, and we decline to presume that the record of the hearing would support the trial court's decision. *See id.*

Turning to Hiles's arguments, we first consider Hiles's contention that the venue-selection clause was unenforceable and therefore his agreement that venue was proper in Harris County should not be considered when balancing the equities. Hiles is correct that venue-selection clauses are generally unenforceable in Texas unless the contract evinces a "major transaction" as defined in the venue rules. *See In re Tex. Ass'n of Sch. Bds.*, 169 S.W.3d 653, 660 (Tex. 2005) (venue-selection clause in contract that was not a major transaction unenforceable); *Yarber v. Iglehart*, 264 S.W.2d 474, 476 (Tex. Civ. App.—Dallas 1953, no writ) (real-estate agent committed no actionable wrong in contract or in tort by refusing to perform

upon the record before that court when such ruling was made." *Stephens Cnty. v. J.N. McCammon, Inc.*, 52 S.W.3d 53, 55 (Tex. 1932); *see also Keck v. First City Nat'l Bank of Hous.*, 731 S.W.2d 699, 700 (Tex. App.—Houston [14th Dist.] 1987, no writ) ("It is the court's opinion that it is improper to consider any pleadings, actions by the parties, or actions by other courts taking place after the date of the order now appealed.").

an unenforceable oral agreement); *see also* Tex. Civ. Prac. & Rem. Code § 15.020 (venue may be specified by written agreement in a "major transaction" in which "a person pays or receives, or is obligated to pay or entitled to receive, consideration with an aggregate stated value equal to or greater than $1 million").

But Hiles did not argue that the engagement letter's venue-selection clause was unenforceable in response to Arnie's motion to abate. Because Hiles never objected to the trial court's consideration of the venue-selection clause in ruling on abatement, Hiles may not raise this argument on appeal. *See, e.g.*, *In re Am. Optical Corp.*, 988 S.W.2d 711, 714 (Tex. 1998) (per curiam). Therefore, the trial court could have considered Hiles's conduct in contractually agreeing to venue in Harris County and then filing suit in Dallas County contrary to his agreement when weighing whether his conduct was inequitable.

Hiles maintains, however, that he raised the argument that the venue-selection clause was unenforceable in connection with his motion to transfer venue. In Hiles's first motion to transfer venue, he argued that he filed suit against Arnie in Dallas County before Arnie filed suit against him in Harris County, the Dallas County suit related to the identical facts and circumstances as the Harris County suit, and Arnie had actual notice of it before filing the Harris County suit. Hiles mentioned the venue-selection clause briefly, arguing that "the venue-selection clause is, at most, a basis for permissive venue," and stating that the first-filed Dallas County suit took precedence over Arnie's selection of Harris County. In response, Arnie argued, among other things, that the general venue rules supported venue in Harris County and that Hiles contractually agreed to venue in Harris County. Hiles filed a reply brief in which he argued, for the first time, that the venue-selection clause was unenforceable. In a surreply, Arnie argued that Hiles had not shown that Harris County was an improper venue or that venue was

11

mandatory in another county, and further asserted estoppel based on the contractual venue-selection clause. The trial court denied the motion to transfer.

On appeal, Hiles argues that the trial court should have construed his motion to transfer venue as a motion to abate, citing Texas Rule of Civil Procedure 71 and cases directing courts to look to the substance of the relief requested and not merely the title of the pleading. Rule 71 provides that when a party has mistakenly designated any plea or pleading, "the court, if justice so requires, shall treat the plea or pleading as if it had been properly designated." Tex. R. Civ. P. 71. However, Hiles's motion to transfer venue explicitly requested the relief of transfer, not abatement. *See Tovias v. Wildwood Props. P'ship, L.P.*, 67 S.W.3d 527, 529 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (distinguishing between dismissal and abatement). Because the Harris County and Dallas County courts had concurrent jurisdiction, and Hiles did not show that Arnie's choice of Harris County was an improper venue or that venue was mandatory in another county under the applicable venue provisions, he was not entitled to a transfer to Dallas County based on dominant jurisdiction. *See* Tex. R. Civ. P. 86; *Wilson*, 886 S.W.2d at 260–61 (if plaintiff initially files suit in a county of proper venue the plaintiff's venue choice cannot be disturbed).

Moreover, Hiles's request for a transfer of venue was not the proper method for drawing a court's attention to another court's possible dominant jurisdiction. *See, e.g.*, *In re Puig*, 351 S.W.3d at 306 (holding that because "the relators should have filed a plea in abatement" the "district court's denial of the relators' plea to the jurisdiction, therefore, did not constitute an abuse of discretion"); *Tovias*, 67 S.W.3d at 529 (holding that trial court erred in granting plea to the jurisdiction when plea in abatement was proper procedure for asserting dominant jurisdiction). Therefore, we disagree that the trial court should have concluded that Hiles's

12

motion to transfer was really a motion to abate and treated it as such.[8] And because Hiles's motion to transfer was not the proper procedure to assert a dominant-jurisdiction theory, the trial court did not err by denying the motion. *See In re Puig*, 351 S.W.3d at 305; *Tovias*, 67 S.W.3d at 529.

Next, Hiles argues that the allegation that he evaded service cannot be relevant to the equities involved in his earlier filing of the Dallas County suit, because "[t]ime moves forward, not backwards." But the court could have considered Hiles's actions in evading service as further evidence of inequitable conduct directly relevant to venue, because the evidence supports a conclusion that not only did Hiles file suit in Dallas County after agreeing to venue in Harris County, he sought to unfairly delay the Harris County suit by deliberately evading service while moving forward with his suit in Dallas County. Taken together, Hiles's actions could be seen as demonstrating contempt for legal process and a willingness to unfairly manipulate the system to his advantage. Moreover, in the briefing before the trial court, Hiles offered no contradicting evidence or explanation for his actions.

Additionally, Arnie suggests that the trial court could have considered whether Hiles's failure to file the motion to abate for four months was inequitable and constituted waiver. The record shows that Arnie filed suit July 8, 2010, and after substituted service was ordered in September, Hiles answered Arnie's suit on October 10. Arnie filed his motion to abate on January 21, 2011, and obtained a

---

[8] We further note that, although Hiles argued that the venue-selection clause was unenforceable in his reply brief to his motion to transfer venue, he did not repeat that argument in either his later-filed motions to transfer venue or his motions to abate. Nor did he raise it in his post-trial motions. Based on the briefing on the abatement, the trial court could have concluded that Hiles abandoned any argument that the venue-selection clause was unenforceable, if the trial court even recalled that Hiles had raised it in the earlier briefing on the motion to transfer. In any event, the trial court was not obliged to consider an argument mentioned briefly in a different motion that was not re-urged in the motion to abate.

hearing on the motion in February. Hiles offers no explanation for his failure to file the motion to abate earlier other than pointing to his previously filed, procedurally incorrect attempts to raise dominant jurisdiction in his motions to transfer venue.

In sum, Arnie presented the trial court with evidence that Hiles contractually agreed to venue in Harris County for any litigation arising between himself and Arnie, but despite this contractual agreement Hiles filed suit against Arnie in Dallas County. Hiles then evaded service of the Harris County suit, further delaying Arnie's prosecution of its suit in the agreed-upon venue. Hiles also did not move to abate the Harris County suit for four months.[9] Hiles offered no controverting or mitigating evidence, nor did he argue that the venue-selection clause was unenforceable or that estoppel and waiver did not apply. On this record, the trial court could have concluded Hiles's conduct was sufficiently inequitable to bar him from asserting the defense of dominant jurisdiction, and therefore we cannot say that the trial court abused its discretion in denying the motion to abate. *See Curtis*, 511 S.W.2d at 267; *Young*, 101 S.W.2d at 800–801; *cf. Perry*, 66 S.W.3d at 252–53 (holding that, consistent with the justifications for the first-filed rule, a party who files suit on manifestly unripe claims, merely to win a race to the courthouse, should be estopped from arguing dominant jurisdiction).

## III

In his second issue, Hiles contends that the trial court erred in refusing to submit Hiles's tendered jury question on prior material breach. Hiles contends he properly preserved this issue and he presented evidence in support of this

---

[9] We express no opinion concerning whether Hiles's four-month delay in filing the motion to abate, alone, could have resulted in waiver. We note that Arnie cites no authority for the proposition that a four-month delay is grounds for denying a motion to abate, and we have found none. We merely hold that the trial court could have considered the evidence of Hiles's delay along with the other evidence when weighing the equities, particularly in the absence of any responsive arguments or controverting evidence.

affirmative defense. Arnie responds that Hiles did not preserve the issue and no evidence exists of a prior material breach to support the submission of the proposed question. Arnie also argues that no reversible error resulted from the trial court's refusal to submit Hiles's requested question because the sworn-account questions on services "in accordance with an agreement" and the finding that the "account [was] due, owing and unpaid" fairly submitted the breach issue.

## A

A party is entitled to a jury question, instruction, or definition if the pleadings and evidence raise an issue. Tex. R. Civ. P. 278. If there is some evidence to support the submission, the trial court commits reversible error if it fails to submit the instruction. *4901 Main, Inc. v. TAS Auto., Inc.*, 187 S.W.3d 627, 631 (Tex. App.—Houston [14th Dist.] 2006, no pet.). We review a trial court's decision to refuse a particular jury question or instruction under an abuse-of-discretion standard. *See Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) (per curiam). A trial court's error in refusing an instruction is reversible if it "probably caused the rendition of an improper judgment." Tex. R. App. P. 44.1; *4901 Main, Inc.*, 187 S.W.3d at 631.

## B

Initially, we consider Arnie's argument that Hiles failed to preserve this issue. According to Arnie, Hiles's proposed jury instructions on material breach were multifarious and inadequately explained to the trial court.

Hiles proposed three instructions, one of which dealt with excuse from a material breach. Hiles also requested a question that asked whether Hiles's performance was excused because Arnie had previously failed to comply with a

material obligation of the parties' contract.[10] At the charge conference, Hiles did not lodge any objections based on the instructions. However, concerning the proposed question, Hiles's counsel argued, "We have pled a material prior breach which would obviate [Hiles's] obligation to pay anything under this contract" and counsel requested that the trial court submit a question on prior material breach. The trial court refused the proposed submissions in writing.

When determining whether a complaint of charge error is preserved, we ask whether the complaining party "made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *See State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992). On this record, we conclude Hiles has sufficiently preserved his complaint that the trial court refused to submit a question concerning prior material breach. *See id*; *see also Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 451–52 (Tex. 1995) (per curiam) ("While *Payne* does not revise the requirements of the rules of procedure regarding the jury charge, it does

---

[10] Hiles' proposed question asked whether the account between Hiles and Arnie remained unpaid and, if so, whether it was excused because "Arnie previously failed to comply with a material obligation of the contract between the parties." The proposed question also included the following instructions:

The circumstances to consider in determining whether a failure to comply with a contract is material include:

a. the extent to which the injured party will be deprived of the benefit which he reasonably expected;

b. the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;

c. the extent to which the party failing to perform or to offer to perform will suffer forfeiture;

d. the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account the circumstances including any reasonable assurances;

e. the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Answer "Yes" or "No": _____

mandate that those requirements be applied in a common sense manner to serve the purposes of the rules, rather than in a technical manner which defeats them.").

C

A party breaches a contract when it neglects or refuses to perform a contractual obligation. *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App.—Houston [14th Dist.] 2006, pet. denied). If the breach is material, the other party is excused from further performance of the contract. *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam) (citing *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)). Generally, the issue of whether a breach rises to the level of a material breach that will render the contract unenforceable presents a dispute for resolution by the trier of fact. *See Cont'l Dredging, Inc. v. De-Kaizered, Inc.*, 120 S.W.3d 380, 394–395 (Tex. App.—Texarkana 2003, pet. denied). But the materiality of a breach and the resulting unenforceability of the agreement can present questions for the court to resolve as a matter of law. *See Mustang Pipeline Co.*, 134 S.W.3d at 199–200 (concluding that when contract stated time was of the essence and one party failed to perform, other party was excused from performance as a matter of law); *see also Fedgess Shopping Cntrs., Ltd. v. MNC SSP, Inc.*, No 14-07-00211-CV, 2007 WL 4387337, at *3 (Tex. App.—Houston [14th Dist.] Dec. 18, 2007, no pet.) (concluding appellant raised no issue of material fact concerning prior material breach and affirming summary judgment for appellee).

Hiles argues that he presented evidence that he was overcharged and not timely billed for the services rendered. The evidence Hiles points to includes the engagement letter's provision that Arnie's work would be "at the will and discretion of Coats Rose *and/or Hiles*" and Hiles's "understanding" that he would

17

receive a monthly bill for his approval.[11] Hiles also testified that he understood from his conversation with Dennis that preparing the report would require minimal staff time, and his transcribed voicemail reflects his instruction to Dennis to prepare the report based on this understanding, but Hiles was then billed $76,000 for the work. Additionally, Hiles complained that if he had known Arnie's initial bills were as high as they were, he would have terminated Arnie's engagement.

The evidence shows that Hiles signed Arnie's engagement letter in August 2009. In the engagement letter, Arnie agreed to provide consulting and expert services on financial issues relating to the partnership litigation. Hiles agreed to be solely liable to pay Arnie's hourly rates and expenses, as well as a $20,000 retainer. The letter specified the hourly rates to be charged for shareholders, associates, and other staff. The letter also recited that it "constitutes the only agreement of the parties" and "may not be altered or amended except in writing signed by all of the parties" to the agreement. The evidence shows that Hiles paid the retainer and one of Arnie's monthly invoices that had been included in a Coats Rose bill. Although Arnie generally forwarded its invoices to Coats Rose rather than directly to Hiles, the engagement letter did not specify that Hiles was to receive Arnie's invoices directly, and there is no evidence that Hiles complained about not receiving them directly.

The engagement letter also specified that invoices were due and payable within thirty days, and if Arnie was terminated, Hiles remained liable for the bill. But the engagement letter did not require Arnie to submit invoices on a particular date or at specific intervals. Nor did it require pre-approval or authorization of the amounts that Arnie would bill Hiles. Most of Hiles's testimony concerning Arnie's

---

[11] The only other contractual language Hiles points to is the provision that Hiles will pay Arnie's invoices within thirty days or Arnie will "cease all work." But prompt payment is Hiles's obligation, not Arnie's.

alleged prior material breach is based on Hiles's understanding of the contract, not the contract itself. "If the parties have expressly stated the terms of their agreement, they have created an express contract and are bound by it to the exclusion of conflicting implied terms." *Malallah v. Noble Logistic Servs., Inc.*, No. 14-08-01030-CV, 2010 WL 343487, at *2, (Tex. App.—Houston [14th Dist.] Feb. 2, 2010, pet. denied) (quoting *Emmer v. Phillips Petroleum Co.*, 668 S.W.2d 487, 490 (Tex. App.—Amarillo 1994, no writ)) (internal quotation marks omitted); *see also David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450 (Tex. 2008) (per curiam) (declining to hold that a written attorney-fee agreement which specified only hourly rates may be modified by evidence of an oral capping agreement).

The evidence also shows that Arnie worked continuously on the matter between August 2009 and May 2010. On April 30, 2010, Hiles instructed Arnie to prepare a full report documenting Arnie's findings using "a little extra staff time," and Arnie provided the report by mid-May, billing him $76,000 for the work.[12] Hiles never indicated any dissatisfaction with Arnie's services before he filed suit less than two weeks after receiving Arnie's invoice for May. We recognize that the written contract gives Hiles discretion over Arnie's engagement, and Hiles's instruction to prepare the written report using "a little extra staff time" is arguably an exercise of that discretion. Yet even if Arnie breached the contract by disobeying Hiles's instruction and overbilling him for May, that would neither excuse Hiles from paying prior bills nor excuse him from all liability to pay the

---

[12] Hiles also emailed Dennis on May 4, 2010, instructing him as follows: "Please have the full written report on each of every matter you have discovered at the Cascades to me by next Tuesday. Please include all exhibits and back up." There is also evidence that Dennis personally delivered a number of unpaid invoices to Hiles at their April 29 meeting and also forwarded a statement reflecting a balance owed through March 2010 of $217,116.99, via email directly to Hiles in April, before Hiles requested the full report. Hiles testified, however, that he did not see the email and did not review the invoices Dennis handed him before forwarding them to his attorney.

May bill, which even Hiles contemplated would include charges for some staff time. Because Hiles points to no evidence that Arnie's alleged overbilling and failure to timely bill breached a material element of the contract that would excuse Hiles from *all* liability for failing to pay Arnie's bills, he was not entitled to the prior-material-breach question he tendered. *See Mustang Pipeline Co.*, 134 S.W.3d at 199; *see also Williams v. Jackson*, No. 01-07-00850-CV, 2008 WL 4837484, at *4 (Tex. App.—Houston [1st Dist.] Nov. 6, 2008, no pet.) (holding that, as a matter of law, attorney's failure to comply with alleged duty to bill appellant monthly as provided in fee agreement did not discharge appellant's duty to pay attorney); *cf. Long Trusts v. Griffin*, 222 S.W.3d 412, 415–16 (Tex. 2006) (per curiam) (holding that party who elects to treat a contract as continuing is deprived of any excuse for terminating his own performance).

We conclude, therefore, that the trial court did not abuse its discretion in refusing to submit Hiles's proposed question to the jury, and we do not reach Arnie's argument that any error in failing to submit the question to the jury was harmless.

* * *

We overrule Hiles's issues and affirm the trial court's judgment.

/s/    Jeffrey V. Brown
Justice

Panel consists of Chief Justice Hedges and Justices Brown and Busby.