**Affirmed and Opinion filed June 17, 2014.**



In The

# 𝕱𝖔𝖚𝖗𝖙𝖊𝖊𝖓𝖙𝖍 𝕮𝖔𝖚𝖗𝖙 𝖔𝖋 𝕬𝖕𝖕𝖊𝖆𝖑𝖘

## NO. 14-13-00074-CV

### JAMES NEZAT, Appellant

### V.

### TUCKER ENERGY SERVICES, INC., Appellee

**On Appeal from the 270th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2009-44349**

## O P I N I O N

James Nezat appeals from a final judgment favoring Tucker Energy Services, Inc. in Nezat's lawsuit alleging retaliatory discharge under *Sabine Pilot Service, Inc. v. Hauck*, 687 S.W.2d 733, 734-35 (Tex. 1985). Nezat specifically alleged that Tucker Energy terminated his employment because he refused to drive a truck without a required permit. In his first issue, Nezat challenges the trial court's evidentiary ruling excluding certain overweight-vehicle permits. In issue

two, Nezat contends the trial court erred in declining to include a requested definition of "discharged" in the jury charge. We affirm.

## *Background*

Under the employment-at-will doctrine in Texas, employment for an indefinite term can be terminated at will and without cause. *Winters v. Houston Chronicle Publ'g Co.*, 795 S.W.2d 723, 723 (Tex. 1990). In *Sabine Pilot*, the Texas Supreme Court set forth a common law exception to the employment-at-will doctrine, prohibiting an employer from firing an employee solely because that employee refused to perform an illegal act. 687 S.W.2d at 735. To prevail under the "very narrow" *Sabine Pilot* exception, the former employee must prove that "his [or her] discharge was for no reason other than his [or her] refusal to perform an illegal act." 687 S.W.2d at 735.

This is the second appeal in this case. In the first appeal, we reversed the trial court's grant of no-evidence summary judgment, which was based, essentially, on the ground that there was no evidence to establish that Nezat had refused to perform an illegal act. *Nezat v. Tucker Energy Servs.*, No. 14-11-00185-CV, 2012 WL 8716, at *2 (Tex. App.—Houston [14th Dist.] Jan. 3, 2012, no pet.). Upon remand to the trial court, the case proceeded to trial before a jury. As will be discussed in detail below, the jury answered the first question in the charge against Nezat and, according to instructions, did not answer the remaining questions. The trial court then signed a final judgment favoring Tucker Energy.

Tucker Energy is an oil and gas service company. Nezat was an employee of Tucker Energy in December 2008. Among his duties, Nezat was Tucker Energy's "safety representative" responsible for obtaining all required permits for driving the company's vehicles on state highways. According to Nezat, on December 18, 2008, his supervisor, Tane Herbert, called and asked him to go to a

2

job site in Arkansas.[1] The field supervisor for the project, Jason Pitts, subsequently told Nezat that he would need to drive a fluid pump truck to the Arkansas job site. Nezat stated that at that time, he knew the truck was overweight and he suspected it did not have the proper permit to travel in Arkansas. When he asked Pitts about this, Pitts confirmed the truck did not have the requisite permit. Because Nezat knew that such a permit was required by Arkansas law and the failure to obtain one would subject the driver to legal penalties, he refused to drive the truck to the jobsite.[2]

To establish that the vehicle was overweight, Nezat presented his own testimony, a citation issued in Louisiana for the truck being overweight, and eight overweight permits issued by the State of Arkansas, covering dates in December 2008 and January 2009. The trial court admitted the testimony and the Louisiana citation, but it only admitted one of the Arkansas permits into evidence: the first one chronologically, covering December 11 to December 13, 2008.[3] The court expressly excluded the other seven permits based on Tucker Energy's relevance objection.

A key issue at trial was whether Nezat resigned his job when he was directed to drive the pump truck to Arkansas or whether he was fired for refusing to drive the truck. Pitts testified that Nezat "quit." Pitts further explained that Nezat told

---

[1] In its briefing, Tucker Energy states the date as December 16, but the record reflects the actual date was the 18th.

[2] Nezat further explained that obtaining a permit in Arkansas was a process that could not have been completed by the time he was directed to depart in the truck for Arkansas.

[3] The first permit was the only permit offered from before the date Nezat was ordered to drive the truck to Arkansas, December 18, 2008. The seven excluded permits concerned periods subsequent to that time, i.e., December 22, 2008 through January 14, 2009. According to Randy Nitz, the Tucker Energy employee who took over Nezat's former responsibilities of obtaining permits, the company determined in January 2009 that overweight permits were no longer required for the truck.

3

him in a telephone conversation that he (Nezat) would not drive the truck, that he was "throwing his hat in, and he would just go do something else."[4]   This testimony was corroborated by Tucker Energy employee Bruce Lester, who testified that he was with Pitts when the conversation occurred and Pitts had his phone on speaker.  According to Lester, Pitts asked Nezat:  "You're not going to drive the fluid pump?"  Nezat answered, "I'm not going to do this.  I'm done.  I'm hanging my hat up."  Pitts then asked, "Well, does that mean you quit?"  To which, Nezat responded, "Well, just like I said, I'm hanging my hat up."

Nezat denied resigning or ever saying that he was "hanging his hat up."  He insisted instead that his employment was terminated when, in response to his refusal to drive the pump truck, Herbert, Tucker Energy's district manager, sent a text message to Nezat the next day, December 19, stating:  "Please bring all company property to me at the base.  They will prepare your paperwork.  Thanks."  Nezat sent an email message shortly thereafter to members of Tucker Energy management, stating, among other things:  "The reason for me getting fired is very unprofessional.  I don't understand why I was fired because I had refused to drive a truck that didn't have the proper permits to drive in Texas, Oklahoma and Arkansas.  I was just obeying the law.  I then was fired by Tane through a Text [sic] message because I refused to drive the truck to Arkansas.  I feel that this is unfair and unlawful and I think something needs to be done about this. . . . [G]etting fired for doing the right thing is wrong anyway you look at it."

The trial court submitted three charge questions to the jury.  Question No. 1 asked simply, "Was James Nezat discharged by Tucker Energy Services, Inc.?"  Question No. 2 was conditioned on a "yes" answer to the first question and asked,

---

[4] Pitts explained that he called Nezat after receiving a text message from him stating "he was not coming and good luck."  Pitts interpreted that message as indicating Nezat was not coming on the Arkansas job.  Pitts did not keep a record of the text message.

"Was James Nezat discharged for the sole reason he refused to perform an illegal act[?]" Instructions accompanying Question No. 2 set forth Arkansas and Texas law concerning illegal operation of overweight vehicles. *See* Ark. Code § 27-35-203; Tex. Transp. Code § 621.101. Question No. 3, conditioned on affirmative answers to 1 and 2, asked "[w]hat sum of money . . . would fairly and reasonably compensate James Nezat for his damages . . . ?"

During the charge conference, Nezat objected to Question No. 1 and requested an instruction be provided the jury based on Texas Pattern Jury Charge 107.10, which states: "An employee is considered to have been discharged when an employer makes conditions so intolerable that a reasonable person in the employee's position would have felt compelled to resign." Comm. on Pattern Jury Charges, State Bar of Tex., Texas Pattern Jury Charges: Business, Consumer, Insurance & Employment PJC 107.10 (2012). The trial court overruled the objection and declined to submit the instruction.

During deliberations, the jury sent out a note asking, "Is the term 'discharged' to be interpreted as 'fired'[?]" The trial court responded by stating in writing, "Please continue your deliberations in accordance with the instructions in the charge." As mentioned above, the jury answered Question No. 1 "no" and therefore did not answer questions 2 or 3. Based on the jury's verdict, the trial court entered a take-nothing final judgment favoring Tucker Energy.

### *Evidentiary Rulings*

In his first issue, Nezat contends the trial court erred in excluding seven of the overweight permits as irrelevant. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Serv. Corp. Int'l v. Guerra*, 348 S.W.3d 221, 235 (Tex. 2011). Under this standard, we generally affirm the lower court's ruling unless the court acted unreasonably or in an arbitrary manner,

without reference to guiding rules or principles. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 211 (Tex. 2001). Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. Relevant evidence is generally admissible; irrelevant evidence is generally inadmissible. *Id.* 402. To be entitled to reversal due to the erroneous exclusion of evidence, an appellant must show that the error probably resulted in an improper judgment. Tex. R. App. P. 44.1; *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009). In conducting a harm analysis, we review the entire record and require the complaining party to demonstrate that the judgment turns on the particular evidence excluded. *See Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 234 (Tex. 2007); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753–54 (Tex. 1995).

In our opinion in the first appeal, overturning a no-evidence summary judgment favoring Tucker Energy, we explained that the permits in question, along with other evidence, created a fact question as to whether Nezat was asked to perform an illegal act, *i.e.*, driving an overweight truck without the proper permit. *Nezat*, 2012 WL 8716, at *3-4. Thus, the permits were in fact relevant to the same contested issue at trial. *See* Tex. R. Evid. 401; *Nezat*, 2012 WL 8716, at *4. However, even assuming the trial court erred in excluding the permits during trial, we still must conduct a harm analysis to determine what impact, if any, such error may have had on the judgment. *See Bay Area Healthcare*, 239 S.W.3d at 234; *Alvarado*, 897 S.W.2d at 753–54.

At the conclusion of trial, the jury answered only Question No. 1: whether Nezat was discharged. Although the permits may have had relevance to Question No. 2—"Was James Nezat discharged for the sole reason he refused to perform an

illegal act[?]"—the jury did not reach that question, so the erroneous exclusion of evidence relevant solely to Question No. 2 would not be harmful error because it could not have resulted in an improper judgment. *See* Tex. R. App. P. 44.1; *Cent. Expressway*, 302 S.W.3d at 870.

Nezat argues, however, that the excluded permits were in fact relevant to Question No. 1. Specifically, he asserts that if the jury believed Tucker Energy's evidence that the truck was not overweight on the day in question (a conclusion the permits call into question), the jury may have concluded Nezat simply quit and was not fired for refusing to perform an illegal act. We disagree. Question No. 1 only asked whether Nezat was discharged, which could mean discharged for refusing an illegal act or for refusing a legal act or for some other reason. Question No. 1 did not ask whether Nezat was discharged related to his refusal to perform as directed, and thus the jury's answer did not turn on whether Nezat performed or failed to perform something he was told to do or whether such instructions required him to perform an illegal act. Whether the truck was overweight on the day in question was not relevant to whether Nezat was discharged. This is particularly true given that the very next question in the charge asked about whether Nezat was discharged for refusing to perform an illegal act. It would not make sense to interpret the first charge question as implicitly containing the issue explicitly asked about in the second question. Consequently, any error by the trial court in excluding the seven permits on relevance grounds was harmless as the jury verdict, and thus the judgment based on that verdict, did not turn on the excluded evidence. *See Bay Area Healthcare*, 239 S.W.3d at 234; *Alvarado*, 897 S.W.2d at 753–54. For these reasons, we overrule Nezat's first issue.

### *Jury Charge Instruction*

In his second issue, Nezat contends the trial court erred in declining to

7

include his requested instruction regarding "discharged" in the jury charge. A trial court must submit questions, instructions, and definitions to the jury as are necessary to enable the jury to render a verdict. *See* Tex. R. Civ. P. 278. The trial court enjoys considerable discretion in framing a jury charge and is given broad latitude to determine the propriety of explanatory instructions and definitions. *H. E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex. 1998); *Hatfield v. Solomon*, 316 S.W.3d 50, 62 (Tex. App.—Houston [14th Dist.] 2010, no pet.). We review the trial court's charge submission under an abuse of discretion standard. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). As stated above, a trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Butnaru*, 84 S.W.3d at 211.

The specific instruction Nezat requested concerned "constructive discharge." A constructive discharge occurs when an employer makes conditions so intolerable that an employee reasonably feels compelled to resign. *See Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 805 (Tex. 2010). In such cases, we focus on the conditions imposed, not the employer's state of mind. *See Gardner v. Abbott*, 414 S.W.3d 369, 381 (Tex. App.—Austin 2013, no pet.); *Hammond v. Katy I.S.D.*, 821 S.W.2d 174, 177 (Tex. App.—Houston [14th Dist.] 1991, no writ). Courts have concluded that a constructive-discharge finding may be sufficient to fulfill the "firing" requirement in a *Sabine Pilot* case. *Nguyen v. Technical & Scientific Application, Inc.*, 981 S.W.2d 900, 901-02 (Tex. App.—Houston [1st Dist.] 1998, no pet.); *see also Marx v. Electr. Data Sys. Corp.*, 418 S.W.3d 626, 631-32 (Tex. App.—Amarillo 2009, no pet.) (following *Nguyen*).

Presuming without deciding that this conclusion is correct, Nezat would have been entitled to an instruction on constructive discharge only if the issue was raised by the pleadings and evidence. *See* Tex. R. Civ. P. 278; *Hiles v. Arnie &*

*Co., P.C.*, 402 S.W.3d 820, 830 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). In the Factual Background section of his Original Petition, the only petition he filed, Nezat alleged that he was terminated immediately after refusing to perform the illegal act of driving the pump truck to Arkansas. In the Causes of Action section, Nezat twice reiterates that he was "fired" or "terminated" for refusing to drive the truck. At no point does Nezat suggest that he resigned, much less that conditions were made so intolerable that he felt compelled to resign.

In his appellate briefing, Nezat points out that Texas is a "notice pleading jurisdiction," quoting *Koppolow Development., Inc. v. City of San Antonio*, 399 S.W.3d 532, 536 (Tex. 2013), and suggests that his pleadings provided sufficient information for Tucker Energy to prepare a defense to a claim of constructive discharge. But, even if his pleadings were sufficient to give notice of a constructive-discharge claim, Nezat failed to present sufficient evidence at trial to raise constructive discharge as an issue on which the jury needed to be instructed. *See* Tex. R. Civ. P. 278. As in his pleadings, Nezat's position at trial was that Tucker Energy terminated his employment immediately after he refused to drive the pump truck and because he refused to drive the truck. Nezat indeed testified that he was fired, not that he was compelled to quit his job due to intolerable working conditions.

On appeal, Nezat points to the fact another employee had received a citation for the same pump truck being overweight while driving the truck in Louisiana. Nezat suggests that Tucker Energy's knowledge of this citation and the truck's overweight condition, along with Tucker Energy's persistence in ordering him to drive the truck illegally, created employment conditions that were so intolerable that his "resignation would have been a fitting response to Tucker's continued illegal demands of its employees." Even if accepted at face value, however, this

theory does not rise to the level of intolerable work conditions that would support a constructive-discharge claim. *Compare Marx*, 418 S.W.3d at 634-36 (affirming summary judgment where former employee's claims of unfair criticism and discipline, threatening termination, precluding transfer, ridicule, isolation, and interference with his medical care were not causally linked to refusal to engage in alleged illegal overbilling), *and Wal-Mart Stores, Inc. v. Bertrand*, 37 S.W.3d 1, 9-12 (Tex. App.—Tyler 2000, pet. denied) (reversing verdict of constructive discharge where evidence establishing various allegations against employee's supervisor, including name-calling, criticism, and disciplinary actions, was insufficient to support verdict), *with Nguyen*, 981 S.W.2d at 901-02 (holding petition alleging former employee "was harassed, humiliated, ridiculed, tormented, isolated, [and] demoted" for refusing to illegally copy software stated a claim for constructive discharge).

Other than his testimony that he was fired, Nezat does not point to any evidence of repercussions levied or threatened against him for his refusal to drive the truck. Other than the one Louisiana citation, he does not point to any incident in which a Tucker Energy employee performed an illegal act or was ordered to perform an illegal act. In short, the evidence presented did not demonstrate the existence of intolerable conditions compelling Nezat's alleged resignation. *See Waffle House*, 313 S.W.3d at 805. Thus, the trial court was not required to instruct the jury on constructive discharge. *See* Tex. R. Civ. P. 278; *Hiles*, 402 S.W.3d at 830.

Lastly, Nezat emphasizes the note sent out by the jury, which asked, "Is the term 'discharged' to be interpreted as 'fired'[?]" Nezat insists the note indicates "the jury believed that Nezat's termination fell somewhere in between, somewhere along the spectrum of an express firing and the voluntary resignation alleged by

10

Tucker." While this is one possible explanation for the note, it is not the only one. As Tucker Energy urges, the note could also be interpreted as the jury wanting to ensure that "discharged" should be interpreted as "fired" in common parlance. *See generally Medicus Ins. Co. v. Todd*, 400 S.W.3d 670, 681 (Tex. App.—Dallas 2013, no pet.) ("[W]ords of ordinary meaning, readily understandable by the average person, need not be defined in the charge."). Regardless, the jury note is not germane to whether Nezat provided proof sufficient to support an instruction on constructive discharge. *See Hiles*, 402 S.W.3d at 830. Accordingly, we overrule his second issue.

We affirm the trial court's judgment.


/s/  Martha Hill Jamison
    Justice


Panel consists of Chief Justice Frost and Justices Jamison and Wise.

11