# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20208
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

April 24, 2015

Lyle W. Cayce
Clerk

VINAY K. KARNA,

      Plaintiff - Appellant

v.

BP CORPORATION NORTH AMERICA, INCORPORATED,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:12-CV-101

Before HIGGINBOTHAM, JONES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

      After Vinay Karna resigned from BP North America ("BP"), he brought claims for unpaid overtime under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, wrongful termination under *Sabine Pilot Service, Inc. v. Hauck,* 687 S.W.2d 733, 735 (Tex. 1985), and in quantum meruit.[1]  The

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] Karna also brought claims for breach of contract, fraudulent and negligent misrepresentation, and promissory estoppel, none of which are at issue here.

No. 14-20208

district court granted BP summary judgment on the quantum meruit and wrongful termination claims. A jury rendered a verdict in BP's favor on the FLSA claim. Karna now appeals both grants of summary judgment and argues that inadmissible evidence tainted the jury's verdict. For the following reasons, we **AFFIRM**.

## BACKGROUND

Karna is an expert in SAP Business Warehouse ("BW") systems. These systems compile large companies' critical operations data. The systems then allow users, typically the companies' financial analysts, to access and analyze the information. Because these systems typically contain sensitive financial data, they are subject to the Sarbanes-Oxley Act's ("SOX"), Pub L. No. 107-204, 116 Stat. 745 (2002), internal control and auditing provisions. In some cases, violating these provisions can lead to criminal penalties. *See* 18 U.S.C. § 1519. Before Karna worked for BP, he spent four years as an independent contractor for several companies. And before that, he spent four years at Ernst & Young as a BW consultant.

In August 2005, Karna began working for BP as a BW Coordinator. At this point, Karna was BP's independent contractor, though BP never contracted directly with Karna. BP contracted with Ideal Staffing Services ("Ideal") for professional services. In August 2005, Ideal then contracted with Deep Consulting (which Karna and his wife owned) for Karna's services. Under the agreement between Deep and Ideal, Karna would give BP his BW expertise and would be paid by the hour. Karna was required to submit invoices showing the amount of time worked every two weeks. The invoices passed through Ideal on their way to BP. Likewise, the payments passed through Ideal on their way to Karna. After the 2005 agreement expired, Ideal contracted with another company that Karna and his wife owned, LSR Consulting. The contract's terms were essentially unchanged: Karna would

2

No. 14-20208

provide his expertise to BP through Ideal in exchange for a fixed hourly rate. After that contract ended, Ideal signed a third contract for Karna's services with RD Data Solutions, of which Karna is a principal.

In October 2009, BP made Karna a salaried employee. Karna had a new title (WR5/ER5 Applications Support Manager), but not necessarily new responsibilities. The arrangement worked for a time, then quickly soured. In October 2010, one of Karna's bosses, John Ray asked him to provide anonymous IDs for BP's WR5 warehouse system. Because this might violate SOX's record keeping and recording requirements, Karna refused. From then on, Karna alleges BP repeatedly asked him to engage in illegal activity. Specifically, BP allegedly asked him: to help another employee with an illegal "workaround" for his visa; to conceal from auditors that generic passwords were not changed, that contractors were not properly locked out of the BW system, that support personnel had not completed required Federal Energy Regulatory Commission training, and that a local administrative account violated SOX. On February 15, 2011, about five months after Karna's initial refusal, he resigned. He emailed his boss, stating, *inter alia,* "I love what I was doing but I need to move on . . . Thanks so much."

Karna then sued BP, claiming violations of the FLSA, wrongful discharge under *Sabine Pilot,* and quantum meruit. Karna and BP both moved for summary judgment. The district court granted BP summary judgment on the quantum meruit and wrongful discharge claims. In the same order, the district court resolved some elements of the FLSA claim, but reserved others for the jury. Specifically, the district court refused to decide whether Karna was a computer professional exempt from the FLSA's overtime requirements, whether BP's FLSA violation was willful, and the amount of damages owed to Karna. The jury, after receiving an *Allen* charge, found that Karna was exempt from the FLSA's overtime requirements. The district court entered judgment

3

No. 14-20208

in BP's favor.  The district court's rulings on summary judgment and post-trial motions are thorough and comprehensive.  Karna timely appealed.

## STANDARD OF REVIEW

This Court reviews *de novo* the district court's grant of summary judgment and evidentiary rulings for abuse of discretion.  *Admiral Ins. Co. v. Ford*, 607 F.3d 420, 422 (5th Cir. 2010); *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 265 (5th Cir. 2007).  "Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law."  *Quorum Health Res., L.L.C. v. Maverick Cnty. Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002) (internal quotation and citation marks omitted).

## DISCUSSION

This appeal challenges three of the district court's rulings: its grant of summary judgment on the wrongful discharge and quantum meruit claims, and its decision to admit evidence of BP employees' salaries at trial.  This court finds no reversible error in any of the district court's rulings and need only address each briefly.

### I.    WRONGFUL DISCHARGE

Texas is an at-will employment state, meaning an employee can be fired at any time without cause.  *Fed. Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993).  There is a narrow exception, however, when an employer discharges an employee solely because that employee refused to perform an illegal act.  *Sabine Pilot*, 687 S.W.2d at 735.  To establish a wrongful termination claim, the plaintiff must prove that: "(1) she was required to commit an illegal act which carries criminal penalties; (2) she refused to engage in the illegality; (3) she was discharged; [and] (4) the sole reason for her discharge was her refusal to commit an unlawful act."  *White v. FCI USA, Inc.*,

319 F.3d 672, 676 (5th Cir. 2003) (internal citations omitted).  A plaintiff can also prove a *Sabine Pilot* claim by showing that she was constructively discharged.  *Nguyen v. Technical & Scientific Application, Inc.*, 981 S.W.2d 900, 902 (Tex. App. 1998).  Constructive discharge occurs when job conditions are made so difficult or unpleasant that "a reasonable person in the employee's position would have felt compelled to resign."  *Hammond v. Katy Indep. Sch. Dist.*, 821 S.W.2d 174, 177 (Tex. App. 1991).  Like the district court, we need not rule on whether Karna was actually asked to perform illegal acts.

Karna has not created a triable material fact issue for two of these elements.  First, Karna relies on a constructive discharge theory that Texas courts have never recognized.  Karna argues that the repeated requests to commit illegal acts made conditions so unpleasant that he had to resign.  No Texas court has held that repeated requests to engage in illegal activity can support a constructive discharge claim.  In fact, the only Texas court that has addressed the issue suggested that "this theory does not rise to the level of intolerable work conditions that would support a constructive-discharge claim."  *Nezat v. Tucker Energy Servs., Inc.*, 437 S.W.3d 541, 547 (Tex. App. 2014).

Second, assuming *arguendo* that repeated requests of illegality can support a *Sabine Pilot* claim, Karna points to no evidence showing that the *sole* reason for the acts causing constructive discharge was his initial refusal to engage in illegal activity.  *Sabine Pilot*, 687 S.W.2d at 735.  Karna points out that everything was fine before his initial refusal, the subsequent requests followed his initial refusal, and BP has never explained its changed attitude toward him.  Although this may be true, it does not create a genuine issue of material fact that his initial refusal was the *sole* cause of his alleged mistreatment.  Accordingly, summary judgment was appropriate.

No. 14-20208

## II.  QUANTUM MERUIT

To recover in quantum meruit, a plaintiff must establish that: "1) valuable services and/or materials were furnished, 2) to the party sought to be charged, 3) which were accepted by the party sought to be charged, and 4) under such circumstances as reasonably notified the recipient that the plaintiff, in performing, expected to be paid by the recipient." *Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992) (internal citation omitted).  A party generally cannot recover if there is a valid contract covering the services.  *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 740 (Tex. 2005).  That contract need not be between the plaintiff and defendant; the rule applies equally to a "third party foreign to the original [agreement] but who benefited from its performance." *Pepi Corp. v. Galliford*, 254 S.W.3d 457, 462 (Tex. App. 2007) (internal quotation marks and citation omitted).

Karna contends that before he became a BP employee in October 2009, he worked many hours for BP without reimbursement, and he seeks quantum meruit recovery for this work.

The contracts between Ideal and Karna's companies, and between Ideal and BP, however, plainly bar his quantum meruit claim.  On three occasions, Karna's companies (or a company for which he worked) contracted with Ideal; Karna or his wife signed the agreements on behalf of the companies; each time, Karna's services were specifically identified in the agreement.  For years, Karna performed under these agreements.  But now, Karna claims he was not a *party* to the agreements, and therefore can recover in quantum meruit.  He cannot have it both ways:  he cannot receive payment for services performed under the contracts (as he did), then ignore them for tactical advantage.  To put a label on it, Karna ratified the contracts. *See Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792-93 (Tex. App. 2002).  Once ratified, the

6

contracts are enforceable against Karna and he cannot avoid their existence. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547-48 (Tex. App. 1999).

It makes no difference that BP was not an express third-party beneficiary of the contracts between Karna's companies and Ideal. For the contracts to bar a quantum meruit claim, BP need only show that Karna's efforts were undertaken for BP and that BP benefitted from the contracts' performance. *See Hester v. Friedkin Companies, Inc.*, 132 S.W.3d 100, 106-107 (Tex. App. 2004). BP has done that. The district court, therefore, properly granted summary judgment.

## III.  ADMISSION OF EVIDENCE

At trial, the district court admitted into evidence a chart showing BP employees' salaries and pay grades. Karna objected, arguing that it was irrelevant. On appeal, Karna continues to assert his objection. Evidence is relevant if it has any tendency to make a material fact more or less probable. *See* FED. R. EVID. 401(a)-(b). Under this standard, the chart Karna complains about is relevant. The jury was asked to decide whether Karna was a computer professional under the FLSA. An employee is a computer professional if his primary duty involves statutorily defined tasks. 29 U.S.C. § 213(a)(17). The district court instructed the jury that one factor to consider is "the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee." ROA 3154. A chart showing the salary of other employees demonstrates this relationship, and thus could help the jury determine whether Karna is a computer professional. Accordingly, the district court did not abuse its discretion by admitting the exhibit.

## CONCLUSION

For these reasons, we **AFFIRM**.

7